571 P.2d 1177

A. V. "Gabby" HAYES, Jr. and Milton
D. Webb, Petitioners,

v.

Rex E. REEVES, Paul C. Dean, Howard
A. Foster and Lawrence A. Dailey,
Respondents.

No. 11482.

Supreme Court of New Mexico.

Nov. 15, 1977.

Montgomery, Andrews & Hannahs, Fred C. Hannahs, Santa Fe, Robertson & Robertson, G. Gordon Robertson, Raton, for petitioners.

Modrall, Sperling, Roehl, Harris & Sisk, Peter J. Adang, Albuquerque, for respondents.

## OPINION

PAYNE, Justice.

The plaintiffs, partners in a ranching operation, brought a declaratory judgment action to determine whether the defendants were entitled to a real estate commission for the sale of a ranch. The defendants counterclaimed for the commission. At the close of plaintiffs' case, the district court dismissed the jury and directed a verdict in favor of the defendants in the sum of $70,-500. The Court of Appeals, in three diverse but concurring opinions, reversed the decision of the district court and entered judgment for the plaintiffs. Defendants' petition for certiorari was denied and the mandate from the Court of Appeals was sent down.

Defendants filed a motion for reconsideration of their petition for certiorari, which was treated as a motion for rehearing as provided for by Civil Appellate Rule 19 [§ 21–12–19, N.M.S.A.1953 (Supp.1975)]. We determined that certiorari had been improvidently denied and recalled the Court of Appeals' mandate before it was filed in the district court.

Plaintiffs argue that this Court lost jurisdiction at the time the mandate was sent down by the Court of Appeals. We do not accept this view. New Mexico formerly had an appellate rule allowing recall of a mandate. Supreme Court Rule 17(6) [§ 21–2–1(17)(6), N.M.S.A.1953 (Repl.1970)]. Although this rule was not retained, the present rules provide for motions for rehearing if timely filed after a decision of this Court. A denial of a petition for certiorari is a decision within the meaning of the rule.

Even if there was no rule covering the matter, this Court has the inherent power to recall a mandate where clear error appears and the interests of justice so demand. This power must be exercised sparingly. Whether occasioned by a motion for rehearing or initiated by the Court under

its inherent power, rehearings will seldom be granted after a mandate has issued. In *Woodson v. Lee*, 74 N.M. 227, 392 P.2d 419 (1964) this Court addressed a similar problem and quoted from the annotation at 84 A.L.R. 579 (1933) that "to require courts to consider and reconsider cases at the will of litigants would deprive the courts of that stability which is necessary in the administration of justice." The Court also stated the following:

> Although no time within which a mandate may be recalled is prescribed by our rules, it would seem fairly certain that upon mandate having been issued by us and action having been taken thereon in the district court, jurisdiction of this court would be at an end.

74 N.M. at 230, 392 P.2d at 420.

■ In the present case, no action had been taken on the mandate. The mandate had not been filed in the trial court prior to its recall. We hold that this Court retained jurisdiction to hear the defendants' motion for reconsideration.

In April of 1973 the plaintiffs purchased the Corralitos Ranch, located in Dona Ana County. Defendant Webb, a real estate broker licensed in both Arizona and New Mexico, handled the purchase. Webb's New Mexico license was subsequently terminated, but he continued to be licensed in Arizona.

In the fall of 1973 the cattle market declined abruptly, and plaintiffs decided to sell the ranch. Plaintiff Dean contacted the defendant Webb in Arizona to seek his help in finding a buyer for the property because Webb was familiar with the ranch and also because he had a reputation for being effective in large ranch sales.

The price of the ranch was set at $1,100,000 "net" to the plaintiffs. Since Webb did not have a New Mexico real estate license he contacted the defendant Hayes, a New Mexico real estate broker. They agreed to co-broker the ranch property at $1,175,000 to allow for a six percent commission ($70,500) and any additional closing costs.

On Sunday, March 3, 1974, Hayes showed the ranch to a John Donaldson of Tucson, Arizona. During the next 36 hours Donaldson vacillated back and forth on whether to buy the ranch, but early on the morning of March 5, 1974, he called Hayes and said he would go ahead with the purchase. Hayes consulted with Webb by telephone, and upon Webb's recommendation, required a $200,000 earnest money deposit. Defendants felt that a large deposit would prevent Donaldson from "backing out on the deal." Hayes prepared a binder agreement using a standard printed form which Hayes' attorney had earlier reviewed, revised and approved. The binder, in part, contained the following language: "Deed shall be made subject to the usual restrictions and reservations shown of record to John Donaldson . . . .."

About noon on the same day, Donaldson, Hayes and Webb met at the airport in Phoenix, Arizona. Donaldson looked over the agreement, signed it and delivered a $200,000 cashier's check to be held by Webb until all four of the plaintiffs had signed the agreement. Shortly thereafter, plaintiff Dean flew into Phoenix to meet with defendants. Webb suggested that Dean have his attorney look over the binder agreement. Dean signed the agreement without the assistance of an attorney and eventually secured the signatures of the other plaintiffs.

The closing was set for July 1, 1974, but during the months of April and May, Donaldson decided that he was not going to go through with the deal. His attorney began to review the purchase agreement and found that the provisions of the agreement did not contain explicit reservations for minerals and easements. Title abstracts showed many such reservations on the ranch. Donaldson's attorney then advised plaintiffs' attorney that Donaldson would not take the ranch because plaintiffs could not deliver the title required by the contract. He also demanded the return of Donaldson's $200,000 deposit. The plaintiffs' attorney demanded that Donaldson fulfill the agreement. The dispute was compromised by Donaldson surrendering his claim to a refund of the $200,000 in exchange for a release of any further obligations or liability under the purchase agreement.

Plaintiffs did not pay any commission to either Mr. Hayes or Mr. Webb from the forfeited earnest money.

■ Prior to any consideration of defendants' rights to a commission is the question of whether the defendant Webb, who was not a licensed New Mexico real estate broker, can maintain an action for a commission in New Mexico. Plaintiffs argue that the New Mexico Real Estate Brokers and Salesman Act [§§ 67–24–19 to 67–24–35, N.M.S.A.1953 (Repl.1975)] would prevent such an action. Section 67–24–19 provides as follows:

It is unlawful for any person, business association or corporation to engage in the business, act in the capacity of, advertise or display in any manner, or otherwise assume to engage in the business of, or act as, a real estate broker or real estate salesman within this state without a license issued by the New Mexico real estate commission.

Section 67–24–33 further provides:

No action for the collection of commission or compensation earned by any person as a real estate broker or salesman required to be licensed under the provisions of this act [67–24–19 to 67–24–35] shall be maintained in the courts of the state unless such person was a duly licensed broker or salesman at the time the alleged cause of action arose.

Though Webb was not licensed in New Mexico he was licensed in Arizona. The record does not reflect that Webb conducted any negotiations in New Mexico in the capacity of a real estate broker or salesman. He was contacted by plaintiffs in Arizona. He did not show the ranch but only conferred with Hayes, the New Mexico broker, by telephone. Hayes contacted the prospective purchaser, showed the ranch and performed any acts regarding the sale that were performed within the State of New Mexico. The purchase agreement was signed in Arizona, the earnest money was delivered in Arizona, the agreement was signed and accepted by plaintiff Dean in Arizona. Thus Webb did not engage in the business of a real estate broker or salesman

within New Mexico as is prohibited by § 67–24–19. He was not required to be licensed in New Mexico to do what he did and therefore § 67–24–33 would not prevent him from bringing an action in New Mexico for the collection of a commission for services he performed in Arizona.

■ Other sections of the Act give additional support to the right of brokers licensed in other states to associate with New Mexico brokers. Section 67–24–29.G provides in part:

[A] licensed broker may pay a commission to a licensed broker of another state; Provided, further, that such nonresident broker does not conduct in this state any of the negotiations for which a fee, compensation or commission is paid except in co-operation with a licensed broker of this state. (emphasis added).

This section modifies §§ 67–24–19 and 67–24–33 to the extent that a nonresident broker may, in a limited situation, share in a commission. He may only do so, however, through cooperation with a New Mexico licensed broker. We hold that the Act does not deny the defendant Webb access to our courts. He is entitled to maintain his counterclaim in this action.

■ The trial court ruled as a matter of law that the defendants were not negligent in drafting the purchase contract. The Court of Appeals reversed the judgment of the trial court and as a matter of law found the defendants negligent. It is our opinion that both courts were in error by summarily disposing of the case without a factual determination on the conflicting evidence that was presented. Neither a trial court nor an appellate court has discretion in ruling upon a motion for a directed verdict. The evidence must be weighed in the light most favorable to the party resisting the motion, disregarding all conflicts in the evidence unfavorable to that party. *Archuleta v. Pina*, 86 N.M. 94, 519 P.2d 1175 (1974).

■ In determining whether defendants are entitled to a commission and the amount of any commission, the cause of Donaldson's failure to perform the contract must be determined. The record indicates

178

that the failure to consummate the sale may have been due to Donaldson's health or may have been due to the deficiencies in the purchase agreement prepared by the brokers. If the brokers were negligent in performing duties they were obligated to perform and that negligence caused the transaction to fail, and if plaintiffs can show that they have been damaged beyond the extent that they have been enriched, then the defendants have no right to a commission. *Hammond & Taylor, Inc. v. Duffy Tingue Co.*, 39 Del.Ch. 174, 161 A.2d 238 (1960); *See also Tackett v. Croonquist*, 244 Cal.App.2d 572, 53 Cal.Rptr. 388 (1966). If negligence or damages cannot be proven, or if failure to complete the transaction was based upon Donaldson's acts, then the rule set forth in *Stewart v. Brock*, 60 N.M. 216, 290 P.2d 682 (1955) would entitle the brokers to the same commission as if the sale had been consummated.

We remand this case to the district court with instructions to retry the factual issues in conformance with this opinion.

IT IS SO ORDERED.

McMANUS, C. J., and SOSA and EASLEY, JJ., concur.

FEDERICI, J., not participating.