E. W. STINSON, Appellant,

v.

James R. POTTER et al., Appellees.

Court of Appeals of Tennessee,
Eastern Section.

April 5, 1978.
Certiorari Denied by Supreme Court
June 12, 1978.

Courtney N. Pearre, of Fowler, Rowntree, Fowler & Robertson, William J. Brown, Knoxville, for appellant.

Charles B. Sexton, of Sexton, Sexton & Beaty, Oneida, for James R. Potter.

Donald F. Paine of Egerton, McAfee, Armistead & Davis, P.C., Knoxville, for James Sandidge.

OPINION

PARROTT, Presiding Judge.

Plaintiff is appealing the chancellor's order granting defendants' motion for summary judgment dismissing his action seeking payment of a real estate broker's commission under a contract for the sale of defendants' coal mining operation on the ground that plaintiff lacked a Tennessee real estate broker's license.

The plaintiff assigns as error: (1) the chancellor's failure to require proof that acts of solicitation and negotiation for the sale of defendants' coal mining operation occurred in Tennessee, and (2) the chancellor's order granting defendants' motion for

summary judgment based on plaintiff's failure to have a real estate broker's license when a coal mining operation is not real estate within the purview of the statute but involves the brokering of a going business.

The plaintiff, E. W. Stinson, is a Kentucky real estate broker licensed in Kentucky to deal in real estate transactions. On November 7, 1974, Mr. Stinson entered into a contract with the defendants, James and Margaret Potter, to sell their coal mining operation located in Tennessee which included all the assets of their corporation consisting of leases, coal mine, machinery, equipment, stock piled coal, management, supervision, and employees. The contract provided:

> This agreement between E. W. Stinson and James Potter and wife, Margaret Potter, owners of 3775 Oneida Fuel and Coal Co. of Huntsville, Tenn., P.O. Box 138.
>
> Mr. and Mrs. Potter are asking $600,-000.00 net to them for their deep coal mine operation in Scott Co. located on O. D. Carroll land, and McKinley Lowe land.
>
> E. W. Stinson is priceing (sic) the complete operation for $750,000.00 if he gets a buyer he receives all over $600,000.00 and in return he is to take care of Bob Draughn on a finders fee.

In an effort to locate a buyer for the Potters' property, the plaintiff contacted the defendant, James Sandidge, a Kentucky attorney representing United Innkeepers, concerning the sale of the mining business and accompanied Mr. Sandidge to the site of the coal mining operation. According to Mr. Potter's deposition, he understood from the plaintiff that he was to work with Mr. Sandidge on the sale of the property.

Mr. Sandidge negotiated the final purchase by United Innkeepers for $700,000.00. Under a contract with the Potters, Sandidge received a $100,000.00 commission on the sale of the property. Mr. Potter admitted entering into an earlier contract to pay plaintiff a commission on the sale and stated that he did not know how the commission was to be divided between Stinson and Sandidge but assumed they would make that determination.

When the plaintiff negotiated the agreement with the Potters, he did not have a Tennessee Real Estate Broker License. Although he had applied for a license in October 1974 before entering into the contract, Mr. Stinson did not receive his license until January 1975, approximately one month after the completion of the sale between the Potters and United Innkeepers. After the plaintiff learned from a third party that the Potters had sold their coal mining operation to United Innkeepers and that Mr. Sandidge had received a $100,000.00 commission, Mr. Stinson filed this action against the Potters alleging breach of contract and against Mr. Sandidge alleging that he induced the Potters to breach the contract. The defendants filed a motion for summary judgment with various exhibits arguing that the plaintiff was not entitled to recover a broker's commission on the sale of the defendants' property because he was not a licensed real estate broker as required by T.C.A. 62–1301 et seq. The chancellor granted defendants' motion for summary judgment because Mr. Stinson lacked a Tennessee real estate broker's license and regarded as moot the plaintiff's action against Sandidge. The plaintiff has appealed and assigns error to the chancellor's finding.

■ The first assignment of error addresses the chancellor's finding that the plaintiff, while in this state, solicited or negotiated the sale of defendants' coal mining operation when the defendants presented no proof to support that conclusion. The plaintiff admits he did not have a Tennessee real estate broker's license but insists that the record contains no proof he committed any of the prohibited acts in this state. We do not agree. T.C.A. 62–1303 provides:

> From and after July 1, 1973, it shall be unlawful for any person, directly or indirectly, to engage in or conduct, or to advertise or hold himself out as engaging in or conducting the business, or acting in the capacity of a real estate broker or affiliate broker, as defined herein within

this state without first obtaining a license as such broker or affiliate broker, as provided in this chapter, unless exempted from obtaining a license under § 62–1307.

The defendants attached as exhibits to their motion for summary judgment portions of the depositions of Mr. Potter and Mr. Stinson and the two commission contracts. There is sufficient proof from these documents and the pleadings filed by the plaintiff to show that Stinson performed as a real estate broker in this state without a license: (1) the contract between the Potters, Tennessee residents, and the plaintiff is for the sale of a coal mining operation located in Tennessee; (2) Stinson brought Sandidge to the operation site to examine the property for the purpose of locating a purchaser; and (3) Stinson alleges in his complaint that he was to receive a commission for negotiating the sale of defendants' property. Plaintiff's assignment of error of no evidence to conclude the prohibited conduct occurred in Tennessee is overruled.

■ The plaintiff next assigns as error the chancellor's holding that the sale of a going business is within the purview of T.C.A. 62–1301 et seq. and requires a broker's license. The plaintiff argues that the statute was not intended to include the sale of a coal mining operation and cannot be expanded beyond the legislative intent because of criminal sanctions imposed for its violation. Plaintiff cites authorities from other jurisdictions that consider this question and illustrate the following rules adopted by the courts in interpreting their particular state statutes: (1) the New York rule; (2) the New Jersey rule; (3) the Georgia rule; and (4) a modification of the Georgia rule.

The plaintiff argues that we should adopt the New York rule which provides that the sale of a going business does not come within the New York Real Estate Broker's License Act. This rule was adopted in *Weingast v. Rialto Pastry Shop, Inc.*, 243 N.Y. 113, 152 N.E. 693 (1926), where the plaintiff, a business broker engaged in the buying and selling of restaurants, entered into a contract with the Rialto Pastry Shop,

Inc. to sell its restaurant including the store, lease, good will, tables and everything that was part of the business. The court based its decision on Section 440 of the New York Real Property Law which provides:

Whenever used in this article, "real estate broker" means any person, firm or corporation, who, for another and for a fee, commission or other valuable consideration, lists for sale, sells, exchanges, buys or rents, or offers or attempts to negotiate a sale, exchange, purchase or rental of an estate or interest in real estate, or collects or offers or attempts to collect rent for the use of real estate, or negotiates, or offers or attempts to negotiate, a loan secured or to be secured by a mortgage or other incumbrance upon or transfer of real estate.

The New York court concluded this statute was not broad enough to cover every situation where real estate or an interest in real estate is part of the transaction and held that the statute does not apply to an individual engaged in the buying and selling of going businesses even though such transactions may include the lease of a store or building.

One who makes a specialty of procuring purchasers for restaurants, drug stores, grocery stores, and the like as going concerns, where a lease simply goes with the place as a part of the good will, does not become, within this law, a real estate broker. . . .

He was not obliged to take out a license and was not barred from maintaining this action to recover his compensation if he had earned it. (*Weingast v. Rialto Pastry Shop, Inc.*, supra at pp. 694–695)

The court found the sale of the going business was the dominant feature in the contract rather than the lease agreement and held, under New York law, that a real estate broker's license was not required before the plaintiff could recover his commission.

Opposed to the foregoing rule is the so-called New Jersey rule enunciated in *Kenney v. Paterson Milk & Cream Co., Inc.*, 110

N.J.L. 141, 164 A. 274, 88 A.L.R. 1416. Here, an unlicensed broker procured a customer to purchase lands, buildings, equipment, assets, and good will of a milk company with the plaintiff to receive a 3 percent commission on the purchase price. Under New Jersey law it is unlawful for a person to attempt to negotiate a sale of an interest in real estate without a license and any single act, transaction or sale constitutes engaging in business within the meaning of the Act. The court declared the amount of real estate involved in the transaction immaterial because of the broad language of the statute and, after considering the *Weingast* case, concluded that the New Jersey statute precludes the plaintiff's action for his commission. The court found the contract for the sale of the milk company entire and within the statutory provision requiring a real estate broker to be licensed. The New Jersey court has been cited as stating this rule as follows:

> If a contract be in its nature entire, and in one part it satisfies the statute, and in others does not, then it is altogether void. (*Kenney v. Paterson Milk & Cream Co., Inc.*, supra, at 276.)

The third approach is illustrated by the Georgia rule which was established in *Moreland v. Kilgore*, 83 Ga.App. 606, 64 S.E.2d 295 (1951), where the sale of a store included both realty and personalty. The defendant argues that the plaintiffs were not entitled to a commission on the sale because they failed to have a broker's license as required by Georgia law. The court stated:

> Even if it be conceded that the plaintiffs were not entitled to recovery of the commissions on the sale of the real estate, we find no law that would prevent the plaintiff recovering a commission for the sale of the personalty involved. (*Moreland v. Kilgore, supra*, at 297.)

The court allowed the plaintiffs to recover a commission on the personalty sold under the contract because the sale of personalty was not regulated by the statute requiring a license for the sale of real estate.

The fourth position is a modification of the Georgia rule. This approach permits a recovery of the commission on the personal property included in the sale if the contract is divisible, with separate commissions designated for personalty and realty. This rule is found in *Marks v. Walter G. McCarty Corp.*, 33 Cal.2d 814, 205 P.2d 1025 (1949), where a hotel, its furniture and equipment were the subject of the sale. The defendant argued the contract was void under the Statute of Frauds because the party to be charged had not signed the contract. The court disallowed the commission on the sale of the land upon finding the contract failed to satisfy the Statute of Frauds but held there was no Statute of Frauds barrier to a recovery of plaintiff's commission on the sale of personalty where the purchase price had been apportioned between the realty and personalty.

The determination of the necessity for a real estate broker's license where the sale includes both real and personal property is usually held to depend upon the language of the particular statute under consideration. The authorities cited by the plaintiff are not controlling but are important as a guide to our interpretation of the scope of the Tennessee Real Estate Broker License Act. Since the plaintiff admits he was not licensed in Tennessee when he entered into the contract with the Potters and there is sufficient evidence to show that the plaintiff performed services as a real estate broker in this state, our final determination is whether the sale of a coal mining operation as a going business qualifies as a sale of real estate. After considering the approaches taken in other jurisdictions, we conclude that the language used in our Act is broad enough to include the sale of a going business and require a real estate broker to have a real estate license.

"Broker" is defined in T.C.A. 62–1302(b) as:

> . . . any person who for a fee, commission, finders fee or any other valuable consideration, or with the intent or expectation of receiving the same from another, solicits, negotiates or attempts to solicit or negotiate the listing, sale, purchase, exchange, lease or option to buy,

sell, rent, or exchange for any real estate or of the improvements thereon, collects rents or attempts to collect rents, auctions or offers to auction, or who advertises or holds himself out as engaged in any of the foregoing. . . .

"Real estate" includes "leaseholds, as well as any other interest or estate in land, whether corporeal, incorporeal, freehold or nonfreehold, and whether the real estate is situated in this state or elsewhere." T.C.A. 62–1302(a). It is unlawful under T.C.A. 62–1303 "for any person, directly or indirectly, to engage in or conduct, or to advertise or hold himself out as engaging in or conducting the business, or acting in the capacity of a real estate broker or affiliate broker, as defined herein within this state without first obtaining a license as such broker or affiliate broker . . . ." Finally, T.C.A. 62–1308 provides that an individual cannot bring an action seeking compensation for rendering services prohibited by the Act unless that individual was licensed at or before the time of performing the services.

The statutory language used in T.C.A. 62–1302 is determinative of the issues in this case. The legislature obviously intended that the Real Estate Broker License Act should apply to all brokers involved in transactions resulting in the sale of real estate and has required strict compliance with the terms of the Act before a broker can use the courts to collect fees or commissions. The plaintiff's commission contract for the sale of defendants' coal mining operation fits within the category of a sale of any interest in land or improvements thereon. We therefore conclude that the plaintiff is not entitled to receive a commission on the sale of defendants' coal mining operation because: (1) the sale of a going business including an interest in real estate is within the broad language used in our Act; (2) the plaintiff did not have a Tennessee real estate broker's license while negotiating the sale of defendants' property in this state; and (3) the contract entered into by the plaintiff and the Potters is not divisible, the commission being the total amount received in excess of $600,000.00.

The chancellor's order granting the defendants' motion for summary judgment is affirmed with costs taxed to the appellant.

SANDERS and GODDARD, JJ., concur.