Charles E. DICKERSON,
Plaintiff-Appellant,

v.

SANDERS MANUFACTURING COMPA-
NY, A Partnership: Clark Gower, Indi-
vidually and as Managing Partner; and
H. Wade Sanders, Evelyn Deal, Leona
Gower, Hilman Jack Holt, Martha R.
Sanders, James J. Sanders, III, J.J.
Sanders, Jr., Thomas K. Sanders, David
Sanders, Walter O. Sanders, Owen Fran-
ces Sanders, Walter Eugene Sanders,
Charles M. Sanders, Nelle Sanders Holt,
Elizabeth Ann Sanders, and Jack Sand-
ers Holt, Individually, and as Partners in
Sanders Manufacturing Company, De-
fendants-Appellees.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

July 13, 1983.

Application for Permission to Appeal
Denied by Supreme Court
Oct. 11, 1983.

Larry L. Roberts, Harry B. McNutt, Phillip M. Carden, Nashville, for plaintiff-appellant.

John S. Bryant, Bass, Berry & Sims, Nashville, for defendants-appellees.

## OPINION

LEWIS, Judge.

Plaintiff appeals from the judgment of the Trial Court sustaining defendants' motion for summary judgment.

Summary judgment is to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn.R.Civ.P. 56.03.

Our review of the record reveals no genuine issues of material fact.

■ This Court, in reviewing the record of a motion for summary judgment, must view the pleadings and proof in the light most favorable to the opponent to the motion. *Wyatt v. Winnebago Industries, Inc.*, 566 S.W.2d 276 (Tenn.App.1977).

Our review of the record discloses that plaintiff was employed by defendant Clark Gower to sell the partnership known as Sanders Manufacturing Company; that Gower represented that he was authorized to contract on behalf of the partnership to employ plaintiff to sell the assets of the partnership; "that he procured a buyer who submitted a written contract for a sale in excess of the asking price, and that Sanders Manufacturing Company refused to close the sale.... The contract submitted by the proposed buyer reflects that the plaintiff was to receive a commission of 10% of the total purchase price which includes a building and real estate." Furthermore, "[t]he plaintiff is not a licensed real estate broker" and, from our reading of the rec-

ord, had not applied for such a license at any time relevant to this case.

■ The Chancellor found that the Tennessee Real Estate Broker Licensing Act of 1973 (Act), T.C.A. § 62–13–101, *et seq.*, denied plaintiff any cause of action to recover a commission. The Act requires licensure by the State of all persons who bring together a buyer and a seller for the purpose of conveying any interest in real estate. The legislature decided that, to make unlicensed brokering financially unattractive, unlicensed persons who perform this service will be denied court enforcement of compensation agreements and will be civilly liable to return any commission paid to them. This sanction has been held to apply to business brokering that involves any interest in land. *Stinson v. Potter,* 568 S.W.2d 291 (Tenn.App.1978).

Plaintiff raises the following issues relative to the application of the Act, which we have restated for clarity:

### I

The Chancellor erred in holding that a real estate broker's license is necessary to maintain an action on a business brokerage contract incidentally involving real estate valued at less than five percent of the purchase price of the business.

The Chancellor relied upon *Stinson* as construing the Act to apply to any sale which results in any conveyance of realty, however incidental it may be:

The statutory language used in T.C.A. 62–1302 is determinative of the issues in this case. The legislature obviously intended that the Real Estate Broker License Act should apply to all brokers involved in transactions resulting in the sale of real estate and has required strict compliance with the terms of the Act before a broker can use the courts to collect fees or commissions. The plaintiff's commission contract for the sale of defendants' coal mining operation fits within the category of a sale of any interest in land or improvements thereon. We therefore conclude that the plaintiff is not entitled to receive a commission on the sale of defendants' coal mining operation because: (1) the sale of a going business including an interest in real estate is within the broad language used in our Act; (2) the plaintiff did not have a Tennessee real estate broker's license while negotiating the sale of defendants' property in this state; and (3) the contract entered into by the plaintiff and the Potters is not divisible, the commission being the total amount received in excess of $600,000.00.

568 S.W.2d at 295.

Tracking the factors enumerated in *Stinson,* in this case it is undisputed that (1) Dickerson at all relevant times lacked a real estate broker's license and (2) the attempted sale of Sanders Manufacturing included an interest in real estate. Finally, (3), severance of this transaction into a sale of personalty and a sale of realty to avoid a harsh application of the statute is impossible. The evidence clearly shows that plaintiff's commission was to be "10% of the total purchase price of the company, building and real estate upon the closing of this transaction."

■ We find that *Stinson* is dispositive and hold that, as a matter of law under the Act, plaintiff cannot maintain a cause of action to recover a commission for arranging the aborted sale of Sanders Manufacturing Company.

We also point out that plaintiff, as a stranger to the partnership, cannot benefit from the legal fiction that realty held by a partnership is considered personalty between the partners. This issue is without merit.

### II

Does a single isolated transaction on the part of plaintiff nevertheless require that he have a real estate broker's license?

■ Plaintiff argues that he is not "engaged in" the real estate brokering business and that this proposed transfer of land was a one-shot deal so far as he was concerned.

He cites *Wender v. Lobertini*, 151 Tenn. 476, 267 S.W. 367 (1924), and its progeny for the proposition that a single transaction does not bring him under the Act regulating persons who broker real estate.

Whatever relevancy *Wender* may have to other regulated trades, it has no application to the Act in question. T.C.A. § 62–13–103 specifically refers to "any single act" as subjecting the actor to the strictures of the statute.

> 62–13–103. *Broker or affiliate identified by single act.*—(a) Any person who, directly or indirectly for another, with the intention or upon the promise of receiving any valuable consideration, offers, attempts or agrees to perform, or performs, *any single act defined in § 62–13–102(2),* whether as a part of a transaction, or as an entire transaction, shall be deemed a broker or affiliate broker within the meaning of this chapter.
>
> (b) The commission of *a single such act* by a person required to be licensed under this chapter and not so licensed shall constitute a violation thereof. [Emphasis added.]

This issue is without merit.

### III

Should the "almost licensed doctrine" be extended to include a single phone call to the regulatory authority, here the Tennessee Real Estate Commission (TREC)?

Plaintiff contends that he called TREC on the phone and believes that he spoke with a Vernon Bush, who advised him that no real estate broker's license would be necessary since real estate was only an incidental part of the Sanders Manufacturing sale. Plaintiff cites *Coleman v. Anderson*, 620 S.W.2d 77 (Tenn.1981), for the proposition that this phone call amounted to a good faith attempt to comply with the Act and therefore he should suffer no sanction for failure to comply completely.

However, in *Coleman* and other analogous cases cited by plaintiff, the persons who required licensing had substantially completed the licensing process for their respective professions before they had engaged in activities prohibited by certain regulatory acts to all but licensed persons. These decisions waived sanctions for persons who violated regulatory acts in good faith during a time when they were actively attempting to complete the licensing process.

■ While we believe that plaintiff acted in good faith, we cannot extend the "almost licensed doctrine" to include a single phone call. Neither do we consider the proof in this case to support the plaintiff's contention in the event the doctrine were to be extended. This issue is without merit.

### IV

Does the Act prohibit recovery by plaintiff on the theory of quantum meruit or fraud and deceit?

The Act provides:

> 62–13–105. *Action by broker to collect compensation.*—No action or suit shall be instituted, nor recovery be had by any person, in any court of this state for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provisions of this chapter to other than licensed brokers or affiliate brokers unless such person was duly licensed hereunder as broker or affiliate broker at the time of performing or offering to perform any such act or service or procuring any promise or contract or the payment of compensation for any such contemplated act or service.

Two considerations are raised by plaintiff's plea for quantum meruit. First, quantum meruit recovery has been permitted under the "almost licensed doctrine." The most frequent use of quantum meruit has been in the general contractors field. *Coleman v. Anderson*, 620 S.W.2d 77 (Tenn. 1981); *Gene Taylor & Sons Plumbing Company, Inc. v. Corondolet Realty Trust*, 611 S.W.2d 572 (Tenn.1981).

■ The statute covering licensure of contractors provided a penalty for failure to be licensed but did not expressly prohibit enforcement of the contract. *See* 611 S.W.2d at 577. In contrast, the Real Estate

Broker Licensing Act contains specific and unequivocal prohibition against court-ordered "compensation" for unlicensed persons. "Compensation" embraces almost every form of recovery, including quantum meruit. *Black's Law Dictionary* 256 (rev. 5th ed. 1979).

Our research reveals only one reported case which has allowed court-ordered compensation to a person unlicensed under the Real Estate Broker Licensing Act. *Tackett v. Mullins,* 612 S.W.2d 909 (Tenn.1981). There, a would-be affiliate real estate broker had met all requisites for licensing but was not yet licensed at the time he earned his commission. Our Supreme Court permitted recovery despite the formal absence of licensing at the time of the transaction.

■ The "almost licensed doctrine" does not extend to the fact situation in the instant case, and quantum meruit cannot be permitted.

■ Second, does plaintiff have a cause of action for fraud and deceit despite T.C.A. § 62–13–105? The Act is broad, covering almost all forms of compensation. Nevertheless, we are of the opinion that the legislature cannot have intended that T.C.A. § 62–13–105 be employed as both a sword and a shield by unscrupulous persons knowledgeable of the requisites and sanctions of the Act. Fraud and deceit in which the Act is purposefully used to avoid payment should not be ignored by equity.

■ However, the instant case reveals not even a bare allegation that the defendants, or any one of them, knew of T.C.A. § 62–13–105 and intended to use that statute to strike down their contract no matter what the outcome of the sales negotiations and shield themselves behind the statute when brought to answer for their deed. The record in the instant case does not support a cause of action for fraud and deceit.

## V

Is the Tennessee Real Estate Broker Licensing Act of 1973 unconstitutional?

■ Plaintiff presents this Court with a grab bag of sections from the Constitution of Tennessee from which we are to select

one to provide relief from the Act. We summarily reject the challenge presented by Article I, Sections 12, 17 and 20, and Article XI, Section 16, of the Tennessee Constitution since plaintiff advances no arguments for any specific application to this case.

We next reject the attack on the codification and enactment of the statute pursuant to Article II, Sections 17 and 18. This argument has been repeatedly rejected by the courts of this state. *e.g., Nichols v. Tullahoma Open Door, Inc.,* 640 S.W.2d 13 (Tenn.App.1982).

Finally, we reject the contention that Article I, Sections 8 and 22, and Article II, Sections 1 and 2, invalidate the statutory scheme of regulation. This argument was recently overruled by *General Motors Corp. v. Capitol Chevrolet Co.,* 645 S.W.2d 230 (Tenn.1983).

The judgment of the Chancellor in sustaining the motion for summary judgment is affirmed with costs to plaintiff and the cause remanded to the Chancery Court for the collection of costs and any further necessary proceedings.

TODD, P.J. (M.S.), and CANTRELL, J., concur.