Harry L. BENNETT, III, d/b/a Wade Hampton Associates, Plaintiff/Appellant,

v.

MV INVESTORS, a partnership, Samuels & Shainberg Realtors, a partnership; Marvin and Shirley T. Posner, individually; Charlie and Marjorie Rick, individually; Jacob and Miriam Rosenweig, individually; Harry and Flora Samuels, individually; Irvin Lee and Deanna Serenco, individually; Victor S. and Deanna Shainberg, individually; Michael D. and Andrea Uiberall, individually; and Harry Samuels, in his capacity as Trustee for MV Investors, a partnership, and Harry Samuels and Michael D. Uiberall, in their capacity as agents and general partners for MV Investors, a partnership, Defendants/Appellees.

Court of Appeals of Tennessee, Western Section, at Jackson.

May 1, 1990.

Application for Permission to Appeal Denied by Supreme Court Oct. 1, 1990.

Ted M. Hayden and Elizabeth B. Stengel, Memphis, for plaintiff/appellant.

W. Stephen Gardner and Barbara L. Morris of Boone, Wellford, Clark, Langschmidt & Apperson, Memphis, for defendants/appellees.

TOMLIN, Presiding Judge, Western Section.

Harry L. Bennett, d/b/a Wade Hampton Associates, (hereafter "plaintiff") has appealed from a judgment of the Circuit Court of Shelby County granting summary judgment in favor of MV Investors (hereafter "defendants"), holding that plaintiff was denied access to the courts of this state pursuant to the provisions of T.C.A. § 62–13–105. The issue before this Court is whether or not a real estate broker, licensed in a foreign state but not in Tennessee, may sue in Tennessee to recover a real estate commission for procuring a buyer in the foreign state for Tennessee real estate. We hold that he can and reverse the trial court.

The material facts are not in dispute. Plaintiff is a licensed real estate broker in the state of South Carolina. He is not a licensed real estate broker in Tennessee. In June–July, 1985, a representative of Cheek & Morris, Inc., licensed Tennessee real estate brokers located in Nashville, contacted plaintiff about assisting them in their efforts to find a purchaser for a parcel of real estate known as "The Memorial Village Shopping Center" in Murfreesboro. The real estate was owned by defendants. Cheek & Morris mailed a "set up"[1] to plaintiff to assist him in locating a purchaser. Thereafter, plaintiff contacted a client in the real estate investment business and furnished him with a copy of the set up. Plaintiff's client in turn contacted Learsi & Co., Inc. regarding the property.

In December, 1985, defendants and Learsi entered into a contract for the purchase and sale of the shopping center. The contract contained the following language concerning real estate commissions:

15. *BROKERAGE FEES.* Seller agrees to pay a broker's commission to (a) Wade Hampton Associates, Check [sic] & Morris, Inc. and Shainberg & Associates in the aggregate amount of $100,000; and (b) Samuels & Shainberg in the amount of $100,000.00. Each of the parties represents and warrants to the other that it has not incurred and will not incur any other liability for finder's or brokerage fees or commissions in connection with this Agreement. It is agreed that if any claims for finder's or brokerage fees or commissions are ever made against Seller or Purchaser in connection with this transaction, all such claims shall be handled and paid by the party (the "Committing Party") whose actions or alleged commitments form the basis of such claim. The Committing Party further agrees to defend, indemnify and hold the other harmless from and against any and all claims or demands with respect to any finder's or brokerage fees or commissions or other compensation asserted by any person, firm or corporation in connection with this Agreement or the transaction contemplated hereby.

There was an oral agreement to the effect that plaintiff was to receive one-third of the $100,000 commission allocated in the section quoted above to Wade Hampton Associates, Cheek & Morris, and Shainberg & Associates.

It is undisputed that all of plaintiff's activities of every kind and character in connection with this transaction were carried out by him as a co-broker of Cheek & Morris and took place in the state of South Carolina. Plaintiff never came to Tennessee in connection with this transaction, nor did plaintiff engage in any way in the negotiations between Learsi and defendants.

It seems that Wal–Mart was the anchor tenant for the subject property at the time the contract was being negotiated. Prior to the consummation of the contract, Learsi learned that sometime in the future Wal–Mart intended to leave the shopping center

---

1. A "set up" is a document known as a "pro forma" that contains material financial data showing, among other things, the cash flow relative to a piece of commercial property.

for another location. Having been so advised, Learsi declined to go through with the contract of sale. Although plaintiff produced a buyer that was ready, willing and able to purchase the property, plaintiff never was paid his portion of the commission, pursuant to paragraph 15 of the contract. This lawsuit ensued.

It is defendants' contention that because plaintiff is not licensed as a real estate broker in Tennessee, T.C.A. § 62–13–105 prevents him from maintaining an action in the courts of this state to collect a real estate broker's commission. This case appears to be one of first impression in Tennessee. Accordingly, we have looked to the courts of our sister states in order to ascertain how they have dealt with similar cases.

T.C.A. § 62–13–302 reads as follows:

**Employment by broker of unlicensed broker or broker in another state.**—It is unlawful for any licensed broker to employ or compensate any person who is not a licensed broker or a licensed affiliate broker for performing any of the acts regulated by this chapter; provided, however, that a licensed broker may pay a commission to a licensed broker of another state *if such nonresident broker does not conduct in this state any of the negotiations for which a commission is paid.* [emphasis ours]

T.C.A. § 62–13–105, the statute employed by the trial court below in dismissing plaintiff's suit, reads as follows:

**Action by broker to collect compensation.**—No action or suit shall be instituted, nor recovery be had by any person, in any court of this state for compensation for any act done or service rendered, *the doing or rendering of which is prohibited under the provisions of this chapter* to other than licensed brokers or affiliate brokers unless such person was duly licensed hereunder as a broker or affiliate broker at the time of performing or offering to perform any such act or service or procuring any promise or contract or the payment of compensation for any such contemplated act or service. [emphasis ours]

In *Prowell v. Parks*, 767 S.W.2d 633, 634 (Tenn.1989), our Supreme Court identified the expressed intent of the legislature regarding these statutes:

to deter unlicensed persons from performing activities within the statutory definition of a real estate "broker." To deter such activity, the legislature not only made the activity a crime, but elected to deny the unlicensed broker access to the court where the prohibited activities are the core of the action, however the action may be denominated.

The *Prowell* court proceeded to apply the above Code sections as they were intended and denied an unlicensed real estate agent who had engaged in the real estate business in Tennessee access to the courts of this state.

In *Stinson v. Potter*, 568 S.W.2d 291 (Tenn.App.1978), the Eastern Section of this Court held that the proof showed that a Kentucky real estate broker had performed his services in Tennessee in connection with a real estate sales contract. Since he was not licensed to act as a real estate agent in Tennessee, he was prohibited from bringing an action in the courts of this state seeking to recover said commission, applying Section 62–13–105.

One of the issues before the court in *Adams Realty Corp. v. Realty Center Investments*, 149 Ariz. 405, 719 P.2d 291 (1986) was whether or not a California realtor, not licensed in Arizona, would be denied access to the Arizona courts in seeking to enforce a claim for a real estate commission earned as an associate broker with an Arizona realtor in bringing about a sales contract entered into by a California purchaser for Arizona real estate. There the Arizona court had to construe and apply two statutes almost identical to our Sections 62–13–302 and 62–13–105.

In holding that the California plaintiff was not prohibited from maintaining an action to enforce a legal right to a commission, the court said:

interstate real estate transactions are to be encouraged. Recognizing that brokers in several states are often involved in Arizona real estate transactions and

that many such brokers would not be licensed in Arizona, the legislature enacted A.R.S. § 32–2163 [virtually identical to our § 62–13–302] allowing an out-of-state broker to collect commissions when providing services in connection with a licensed, in-state broker.

Because A.R.S. § 32–2163 was intended to recognize the interstate character of Arizona real property transactions, A.R.S. § 32–2152 ... should not be construed to thwart that recognition.[2]

*Id.* 149 Ariz. at 409, 719 P.2d at 295.

A case strikingly similar to the case under consideration is that of *Hayes v. Reeves*, 91 N.M. 174, 571 P.2d 1177 (1977). The *Hayes* court decided the issue of whether or not a real estate broker, licensed in Arizona, could maintain an action for a commission in New Mexico. It was contended by defendants that he could not, relying on a New Mexico statute which read as follows:

No action for the collection of commission or compensation earned by any person as a real estate broker or salesman required to be licensed under the provisions of this act [67–24–19 to 67–24–35] shall be maintained in the courts of the state unless such person was a duly licensed broker or salesman at the time the alleged cause of action arose.

*Id.* 571 P.2d at 1180.

The facts as recited therein reflect that the complaining party did not engage in the business of a real estate broker within the state of New Mexico, but that all of his activities were carried out in the state of Arizona, where he was licensed. All New Mexico activities were carried out by his associate, a licensed New Mexico broker. The *Hayes* court noted that "[h]e was not required to be licensed in New Mexico to do what he did and therefore § 67–24–33 would not prevent him from bringing an action in New Mexico for the collection of a commission for services he performed in Arizona."

Following the logic of the Arizona court in *Adams Realty Corp., supra,* the *Hayes* court held that another section of the New Mexico Code, strikingly identical to our Section 62–13–302,

modifies ... § 67–24–33 to the extent that a nonresident broker may, in a limited situation, share in a commission.... We hold that the Act does not deny the defendant Webb access to our courts. He is entitled to maintain his counterclaim in this action.

Defendants seek to negate the application of *Hayes* by pointing out that in *Hayes*, both the resident broker and the nonresident broker filed suit for the commission allegedly due, whereas in the case before us, only the nonresident broker has sued.

In *Tassy v. Hall*, 429 So.2d 30 (Fla.App. 1983), the Florida Court of Appeals had before it the issue of whether or not a real estate broker, not licensed in Florida but licensed in another state, could maintain an action in a Florida court for a commission as a result of procuring a purchaser in the foreign state for Florida real estate. The *Tassy* court held that the nonresident broker could maintain such an action. It further held that if he performed services in good faith as a cooperating broker with a Florida licensed broker, he would not be barred from recovering a brokerage commission.

In *Keenan Co. v. Pamlico, Inc.*, 245 Ga. 842, 268 S.E.2d 334 (1980), two South Carolina realtors filed suit in the state of Georgia against a Georgia corporation seeking recovery of a real estate commission from the sale of defendant's land located in North Carolina. The trial court granted summary judgment for the defendant based upon a statute strikingly similar to our Section 62–13–105. The Georgia statute required a plaintiff to be licensed as a real estate broker or salesman under Georgia law in order to sue for the collection of real estate commissions. The Court of Appeals affirmed.

that he/she was qualified in Arizona as a licensed broker or salesman at the time the claim arose.

**2.** This section required that anyone bringing an action in the courts of Arizona to collect compensation as a broker or salesman must allege

The Supreme Court found the facts to be that one plaintiff never physically entered the state of Georgia in regard to the transaction. All of his business was conducted by mail or telephone from South Carolina. He made two trips to the subject property in North Carolina. The other plaintiff performed most of his services by mail or telephone from his South Carolina office. He did enter the state of Georgia on three occasions—(1) at the invitation of the defendant to see a presentation of the property; (2) to deliver an offer of purchase directly to defendants' office; and (3) to pick up a copy of the commission agreement at defendants' office.

Reversing the judgment of the trial court granting summary judgment, the Court stated:

> We hold that Code Ann. § 84–1404 does not bar the appellants access to the courts of this state on the basis of their not having Georgia Real Estate licenses, when their sole contacts with this state have been in furtherance of an isolated interstate sales transaction. There is no public interest of this state to be served by regulating the activities of licensed real estate brokers of other states, which take place outside the state, and we thus interpret the applicable Georgia statute accordingly.

*Id.* 268 S.E.2d at 336.

■ We have examined the cases cited by defendants in support of their position. We find them either to be readily distinguishable on a factual basis, not on point, or unpersuasive. We are of the opinion that the better and more persuasive authorities are those cases which we have herein cited and reviewed. In this modern-day world, this Court can take judicial notice of the fact that Tennessee real estate is bought and sold on a daily basis by persons and entities not only from foreign states, but from foreign countries. Interstate real estate transactions should be encouraged, not discouraged. Inasmuch as this record reflects that none of the acts performed or services rendered by plaintiff was prohibited under our real estate statutes, plaintiff is not barred from maintaining an action for a commission in this state because of the provisions of T.C.A. § 62–13–105.

■ Furthermore, inasmuch as plaintiff worked in cooperation with licensed Tennessee brokers to procure a nonresident purchaser for the subject property, he need not be joined in this litigation by the licensed Tennessee brokers with whom he was associated in order to enforce his right to a real estate commission.

Accordingly, the order of the trial court granting summary judgment in favor of defendants is reversed. This cause is remanded to the Circuit Court of Shelby County for further proceedings consistent with this opinion. Costs in this cause are taxed to defendants, for which execution may issue if necessary.

HIGHERS and FARMER, JJ., concur.