**MEMPHIS PUBLISHING COMPANY, d/b/a the Commercial Appeal and Memphis Press-Scimitar, Michael Grehl, Editor of the Commercial Appeal, and Milton R. Britten, Editor of the Memphis Press-Scimitar, Plaintiffs,**

v.

**William L. LEECH, Jr., Attorney General and Reporter of the State of Tennessee, Defendant.**

No. 82–2138–M.

United States District Court, W. D. Tennessee, W. D.

May 13, 1982.

Walter P. Armstrong, Jr., Fred M. Ridolphi, Jr., Jon P. McCalla, S. Russell Headrick, Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, Tenn., for plaintiffs; Bruce W. Sanford, Lee J. Levine, Elizabeth R. Moore, Baker & Hostetler, Washington, D. C., of counsel.

Robert B. Littleton, Sp. Deputy Atty. Gen. for Litigation, Nashville, Tenn., for defendant.

## MEMORANDUM DECISION

McRAE, Chief Judge.

This case presents the question whether the Commerce Clause, Equal Protection Clause, or First Amendment of the Constitution are violated by a Tennessee statute requiring certain newspapers in Tennessee to include within advertisements for alcoholic beverages sold by retailers in states other than Tennessee a warning stating the illegality and potential consequences of transporting alcoholic beverages into Tennessee without a permit.

Plaintiffs, Memphis Publishing Company and Michael Grehl and Milton R. Britten, editors, respectively, of The Commercial Appeal and the Memphis Press-Scimitar, the daily newspapers produced by Memphis Publishing, filed this action seeking a preliminary injunction and declaratory judgment against defendant Attorney General William M. Leech's enforcement of the above-described Act, which is codified at Tenn.Code Ann. § 47–18–117. Briefs were filed, and a hearing was held in this cause. The parties have stipulated that no further hearing is required; therefore, this order is dispositive of this cause.

## FACTS

On April 29, 1981, the Tennessee legislature adopted an amendment to the Tennessee Consumer Protection Act which provides as follows:

> Any publication of general circulation, at least twenty percent (20%) of the published copies of which are sold or distributed in the state of Tennessee, which publishes any advertisement by or on behalf of any person, firm or corporation selling or distributing alcoholic beverages at retail in a state other than Tennessee, shall publish a notice to consumers as a part of, or immediately adjacent to, each such advertisement. Said notice shall read as follows:
>
> > WARNING: The importation or transportation of alcoholic beverages into the State of Tennessee by any person not possessing a permit from the Tennessee Alcoholic Beverage Commission is a Criminal Offense which could be punished by FINE or IMPRISONMENT or BOTH.
>
> Said notice shall be printed in a space equal to or greater than thirty percent (30%) of the total space devoted to each such advertisement in print no smaller than the largest print type employed in such advertisement.

Tenn.Code Ann. § 47–18–117. The criminal offense referenced in the required warning is set forth at Tenn.Code Ann. §§ 39–2509 and 39–2511, which provide, *inter alia*, that the transportation of intoxicating liquor, including wine and beer, into Tennessee constitutes a crime if it is not transported for resale and if the proper state revenue stamp has not been affixed.

At oral argument, defense counsel stated that the purpose for enacting § 47–18–117 was twofold: to educate Tennessee citizens regarding the criminal nature of transporting liquor into Tennessee and to stem the loss of revenue occasioned by Tennessee citizens' purchase of alcohol in other states to avoid Tennessee's taxes on alcohol.

Plaintiffs are involved in this action because they publish the two major daily general circulation newspapers in Memphis. Thus, their advertising is derived from Memphis' trade zone, which includes those parts of Arkansas located across the Mississippi River from Memphis and those parts of Mississippi contiguous to the southern boundary of Memphis and Tennessee.

Defendant Attorney General is empowered to enforce § 47–18–117 by seeking injunctive relief. Tenn.Code Ann. § 47–18–108; Stipulations at ¶ 7. By letter of January 5, 1982, defendant informed Memphis Publishing that, in his opinion, *The Commercial Appeal* was not in compliance with the Act and that enforcement would be effected through litigation if not through immediate voluntary compliance. Exhibit A to Complaint.

## LEGAL ANALYSIS

### COMMERCE CLAUSE

■ Plaintiffs contend that § 47–18–117 is impermissible under the Commerce Clause of the United States Constitution, art. 1 § 8, cl. 3, because the Act unduly burdens interstate commerce and because nondiscriminatory alternatives adequate to preserve the local interests at stake are available. This approach would be appropriate in the vast majority of cases presenting a challenge on Commerce Clause grounds. *E.g., Hughes v. Oklahoma*, 441 U.S. 322, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979); *Hunt v. Washington Apple Advertising Commission*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). However, the United States Supreme Court has held consistently that by virtue of the Twenty-First Amendment, "[A] State is totally unconfined by traditional Commerce Clause limitations when it restricts, regulates or prevents the importation of intoxicants destined for use, distribution or consumption within its borders." *Hostetter v. Idlewild Liquor Corp.*, 377 U.S. 324, 330, 84 S.Ct. 1293, 1296, 12 L.Ed.2d 350 (1964); *Ziffrin, Inc. v. Reeves*, 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128 (1939).

Because Tennessee's authority to establish liquor regulations under the aegis of the Twenty-First Amendment is not constrained by the Commerce Clause, this Act does not violate the Commerce Clause of the Constitution.

### FIRST AMENDMENT

■ Plaintiffs advance several theories under which § 47–18–117 offends the First Amendment. First, plaintiffs contend that the state infringes First Amendment rights by restricting the free flow of information, appropriating to the media the responsibility to enforce public policy and interfering with editorial discretion. Secondly, plaintiffs contend that the Act is an invalid restraint on constitutionally protected commercial speech.

1. Core First Amendment Rights

   a. Restriction on the Free Flow of Information

Plaintiffs argue that § 47–18–117 is a restraint upon printed publications which is impermissible because it restricts the circulation of information to which the public is entitled by virtue of the First Amendment's guarantee of freedom of the press, incorporated to the States through the Fourteenth Amendment. Plaintiffs ground this argument on *Grosjean v. American Press Co.*, 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936), which struck, on First Amendment grounds, a Louisiana two percent (2%) tax on gross advertising revenue in publications with a circulation of at least 20,000. In *Grosjean* the Court found the tax to be a restraint both because it curtailed the net revenue realizable to such publications from advertising and because the tax tended to restrict circulation. *Id.* at 244–45, 56 S.Ct. at 446–447. The Court held, however, that the evil behind the advertising tax was its "long history of hostile misuse against the freedom of the press," rather than the fact that it took money from the press. 297 U.S. at 250, 56 S.Ct. at 449.

The position taken by plaintiffs herein is that § 47–18–117 is an impermissible restraint on newspaper revenue and circulation. They reason that revenue will be curtailed because they will lose advertisement of out-of-state liquor advertisers who are unwilling to pay for an extra 30% of space. The restraint on circulation is projected to occur because the Act provides an incentive to newspapers to maintain their Tennessee circulation below the 20% cut-off which triggers the warning requirement.

Even if a history of abuse toward the press could be attributed to space or warning requirements, any suggestion that § 47–18–117 will impose restraints on revenue is pure speculation. There is no way of proving whether out-of-state liquor advertisers will refuse to bear any additional costs occasioned by the warning requirement. Plaintiffs have submitted an affidavit of Mr. Ben McGee, an Arkansas liquor retailer and advertiser in plaintiffs' newspapers, stating that he would shift immediately to alternate media rather than pay for the additional warning space. As the radio or television advertising of distilled spirits is banned in Tennessee and the advertising of wine is restricted, Tenn. ABC Reg. 0100–3–04, it cannot be assumed that others would choose this illegal option.

The argument that the additional financial burden imposed by § 47–18–117 upon *The Commercial Appeal,* the *Press-Scimitar,* or certain of their advertisers will cause these publications to reduce their Tennessee circulation to less than 20% of their total circulation is frivolous. Over 79% of these publications' combined circulation derives from Tennessee. *See* Plaintiff's Brief at 2 n.1. Plaintiffs are highly unlikely to cut a sufficient amount of their circulation in order to avoid the impact of § 47–18–117.

As there has been no showing that the warning requirement in § 47–18–117 will impose restraints on plaintiffs' revenues and circulation, this Act does not conflict with the guarantee of a free press under the principles set out in *Grosjean.*

### b. Appropriation of Media to Enforce Public Policy

Plaintiffs also submit that § 47–18–117 impinges on core First Amendment rights by appropriating the media to enforce indirectly a public policy that the State of Tennessee apparently has been unable to enforce directly. Since Tennessee is not empowered to regulate the sale of alcohol outside of its borders, plaintiffs contend, the state legislature enacted § 47–18–117 to use newspapers circulated within the state as vehicles to discourage or stop out-of-state purchases of alcohol by Tennessee consumers.

In support of the proposition that this warning requirement violates freedom of the press, plaintiffs cite the holding in *Bigelow v. Virginia* that a state may not, "under the guise of exercising internal police powers, a citizen of another State from disseminating information about an activity that is legal in that State." 421 U.S. 809, 824–25, 95 S.Ct. 2222, 2234, 44 L.Ed.2d 600 (1975). The *Bigelow* Court reversed the conviction of a newspaper editor who had published an advertisement for a New York abortion referral agency in Virginia.

### c. Interference with Editorial Discretion

■ Plaintiff editors argue that the warning requirement in § 47–18–117 interferes with their First Amendment right to be the final arbiters of their newspapers' content and layout. They urge that under the Supreme Court's decision in *Miami Herald Publishing Co. v. Tornillo,* 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974), any compulsion by the state to print specified material impermissibly intrudes upon the editorial function. This principle, it is contended, applies with equal force to regulation of news copy, noncommercial advertising and commercial advertising.

*Miami Herald* held that a Florida statute granting to political candidates a right to equal space to respond to criticisms of their record by a newspaper violates the First Amendment guarantee of a free press. *Id.* at 241, 258, 94 S.Ct. at 2831, 2839. According to the Court, the "core issue" with respect to the constitutionality of the right to reply statute was whether it "[c]ompel[led] editors or publishers to publish that which ' "reason" tells them should not be published' ...." *Id.* at 256, 94 S.Ct. at 2838. In resolving this issue, the Supreme Court concluded:

> Even if a newspaper would face no additional costs to comply with a compulsory access law and would not be forced to forgo publication of news or opinion by the inclusion of a reply, the Florida Statute fails to clear the barriers of the First

Amendment because of its intrusion into the function of editors.

*Id.* at 258, 94 S.Ct. at 2839.

Because § 47–18–117 requires affected publications, including those published by plaintiffs, to print a warning requirement regarding the illegal nature of transporting alcohol into Tennessee along with every alcohol advertisement accepted from out-of-state retailers, this is a compulsion to print specific matter which conflicts with the broad prohibition against such commands in *Miami Herald.*

That a newspaper may forego publishing the warning by declining advertisements from out-of-state liquor retailers does not save § 47–18–117. This forced choice between foregoing copy or publishing that which would not otherwise be published is the state-imposed dilemma which was disapproved in *Miami Herald. Id.* at 257, 258, 94 S.Ct. at 2839. The statute exacts a penalty in terms of space occupied by the warning rather than the preferred copy. The only alternative is to forego the affected advertisements. This Act thereby improperly intrudes on editorial discretion.

Defendant also contends that the protection of core First Amendment editorial rights announced in *Miami Herald* does not extend to decisions regarding the acceptance of commercial advertising. As authority for this position defendant relies upon *Pittsburgh Press Company v. Pittsburgh Commission on Human Relations,* 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973). In that case, the Supreme Court held that an ordinance, which prohibited the newspapers' use of sex-designated advertising columns for job opportunities, did not violate the First Amendment rights of petitioner Pittsburgh Press. *Id.* at 376, 391, 93 S.Ct. at 2553, 2561. While "reaffirm[ing] unequivocally the protection afforded to editorial judgment," *id.* at 391, 93 S.Ct. at 2561, the Court held that the publication of advertisements concerning illegal commercial activity is not protected. *Id.* at 388–89, 93 S.Ct. at 2560. The regulated advertisements in the instant case are for alcohol sales placed by out-of-state retailers. These

advertisements are not illegal nor is the purchase of liquor by Tennessee residents in other states illegal. Defendant's argument that the publication of these advertisements does not involve protected editorial discretion rests wholly upon their commercial nature.

The Supreme Court relied in part upon *Pittsburgh Press* in holding that speech is not stripped of First Amendment protection simply because it appears in the form of a commercial advertisement. *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975).

*Bigelow* reversed the conviction of the managing editor of a newspaper for publishing an advertisement for abortion services in New York, where abortions were legal. The Court held that the statute upon which the conviction was based, which made it a misdemeanor to encourage or prompt the processing of an abortion, violated the First Amendment as applied to appellant newspaper editor. This conclusion was reached by "assessing the First Amendment interest at stake and weighing it against the public interest allegedly served by the regulation." *Id.* at 826, 95 S.Ct. at 2234. The Court announced that no court could avoid this task regardless of the label attached to the speech. *Id.*

In its assessment of the First Amendment interests involved in *Bigelow,* the Court considered: 1) whether the advertisement at issue did more than simply propose a commercial transaction, *id.* at 822, 95 S.Ct. at 2232, 2) whether the state effectively sought to control the dissemination of information about activities outside its borders, *id.* at 822–25, 95 S.Ct. at 2232–2234, and 3) whether the advertisement was deceptive or fraudulent or concerned an activity that was illegal in the state where it was to occur or in the regulating state. *Id.* at 828, 95 S.Ct. at 2235.

The overreaching disapproved in *Bigelow* is manifest with equal force in § 47–18–117. In *Bigelow,* the Court held that while a state may seek to disseminate information to enable its citizens to make better informed decisions when they leave, the state

may not bar a citizen from another state from disseminating information about an activity that is legal in that other state. *Id.* at 810, 95 S.Ct. at 2227. The State of Tennessee would commit this very evil through the enforcement of § 47–18–117. This Act would force alcohol-retailers in, for instance, Arkansas and Mississippi to place ads with information regarding legal liquor sales to people traveling into Tennessee. As in *Bigelow*, this requirement would be enforced through the publisher of the information. That § 47–18–117 compels rather than forbids the publication of specific information is equally obnoxious under the First Amendment. *See* 418 U.S. at 256, 94 S.Ct. at 2838.

While this advertising, like all public expression, is subject to reasonable regulation that serves a legitimate public interest, *id.* 421 U.S. at 826, 95 S.Ct. at 2234, the First Amendment interests that are at stake herein outweigh the defendant's asserted interest in educating the public. T.C.A. § 47–18–117 therefore violates the First Amendment by intruding impermissibly into the editorial discretion involved in accepting and preparing the copy for commercial advertising.

**2. Invalid Restraint on Commercial Speech**

The warning requirement in § 47–18–117 also violates the First Amendment's guarantee of free expression.

■ Commercial speech is accorded a lesser protection than that enjoyed by other forms of constitutionally guaranteed expression. In *Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), the Court set out a four-step analysis for determining when a regulation impermissibly restricts commercial speech. To enjoy First Amendment protection, commercial speech must (1) concern lawful activity and not be misleading. If the speech is protected, a regulation of it is permissible only if (2) the asserted governmental interest is substantial, (3) the regulation directly advances the interest asserted and (4) the regulation is no more extensive than neces-

sary to serve that interest. *Id.* at 566, 100 S.Ct. at 2351.

As stated above, the alcohol sales regulated by § 47–18–117 are legal, and there is no allegation that the affected alcohol advertisements are misleading.

■ This Court has acknowledged that Tennessee has a substantial interest in educating its citizens regarding the crime of importing alcohol. It is clear that this interest would be advanced directly by including information regarding this crime in every out-of-state liquor retailer's advertisement in publications with greater than twenty percent (20%) Tennessee circulation.

The substantiality of Tennessee's interest in stemming the loss of revenue on liquor sales is less clear. As discussed, Tennessee is not authorized to regulate its citizens' purchase or consumption of alcohol outside of Tennessee. Because § 47–18–117 is directed at deterring out-of-state purchases of alcohol by Tennessee citizens rather than merely deterring its importation into Tennessee, the state cannot justify its regulation of commercial speech under the aegis of protecting revenue.

It is unnecessary to determine whether this second criterion is met because the third *Central Hudson* criterion is not satisfied. Defendant's contention that the warning requirement in § 47–18–117 will curb the outflow of revenue from alcohol sales is speculative.

The fourth *Central Hudson* criterion presents a severe obstacle to the state's asserted interest in educating the public. To withstand First Amendment scrutiny, § 47–18–117 must be no broader than necessary to advance the education of Tennessee citizens regarding the crime of importing alcohol into the State. The excessive size and typeface requirements in the Act fall far short of satisfying this requirement.

The Act requires that each warning be printed in a space at least 30% the size of the accompanying advertisement and in print no smaller than the largest type employed in the advertisement. T.C.A. § 47–18–117. This typeface requirement often

**412**

will render the 40-word warning larger than 30% of the regular advertisement size. This requirement is more onerous than necessary to inform those sought to be informed. Therefore, the warning instead appears to be directed at deterring the out-of-state purchase of liquor by Tennessee citizens. As discussed above and as submitted by Senator White in the legislative debate on the Act, such a measure extends beyond the province of the Tennessee legislature. *See* Exhibit A to Stipulations at 1–2.

EQUAL PROTECTION

Plaintiffs finally argue that § 48–18–117 violates the rights secured by the Equal Protection Clause of the Fourteenth Amendment to the Constitution on two bases:

1) the Act applies only to the print media and

2) the Act applies only to those publications which circulate at least 20% of their copies in Tennessee.

It is urged that these classifications which affect fundamental rights are impermissible as they are arbitrary, irrational, and not necessary to promote a compelling governmental interest.

Defendant argues that no Equal Protection issue is raised with respect to the first classification because other stated regulations preclude distilled spirits advertisements and restrict wine advertisements on radio and television. Tenn. ABC Regs. §§ 0100–3–.04(1) and (2). To apply the warning requirement to these media, defendant contends, would be to regulate more broadly than necessary. This point is well-taken in regard to distilled liquor advertisements in the electronic media, as the requirement would be meaningless where no ads can be placed. An Equal Protection issue is presented, however, both by the disparate treatment between publications and electronic media with respect to wine advertisements and the discrimination between publications with more than 20% of their circulation in Tennessee and those with a smaller circulation in the state.

Plaintiff correctly argues that strict scrutiny is applied to statutes which affect fundamental rights in an equal protection challenge. *San Antonio School District v. Rodriguez*, 411 U.S. 1, 33–34 & n.73, 93 S.Ct. 1278, 1296–1297 & n.73, 36 L.Ed.2d 16 (1973). A fundamental right is involved where it is explicitly or implicitly guaranteed by the Constitution. *Id.* at 33–34, 93 S.Ct. at 1296–1297. As this Court has held above that § 47–18–117 affects and, indeed, impermissibly infringes upon First Amendment rights, strict scrutiny must be applied in the instant case. *See Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 n.3, 96 S.Ct. 2562, 2566 n.3, 49 L.Ed.2d 520 (1976).

In order to withstand strict judicial scrutiny, a law must be "necessary to promote a compelling governmental interest." *Dunn v. Blumstein*, 405 U.S. 330, 342, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274 (1972). A showing that the law under consideration furthers a "very substantial state interest" is not enough. *Id.* at 343, 92 S.Ct. at 1003. The Act must be "drawn with 'precision'" and represent the least drastic means of achieving the compelling state objective. *Id.* A "heavy burden of justification" is upon the state to make this showing. *Id.*

It is clear, as discussed above, that defendant has not met its burden of showing that the warning requirement imposed by § 47–18–117 is necessary to the achievement of a citizenry informed of its alcohol importation laws. As discussed above, the typeface and space requirements plainly are more onerous than necessary to catch the reader's attention. The choice of these particular requirements appears to have been an arbitrary one. Finally, defendant has not made a showing that these requirements were more effective than other means of informing the public—such as public service announcements and advertisements placed and paid for by the state—which do not place discriminatory burdens.

Plaintiff publications' and publishers' equal protection rights therefore are violated by T.C.A. § 47–18–117's imposition of an

unnecessarily onerous and arbitrary warning requirement on certain publications and not on other media in which alcohol may be advertised.

### CONCLUSION

This Act violates the First Amendment guarantees of free expression and a free press by impermissibly restricting commercial speech and intruding into editorial discretion. Section 47–18–117 also deprives plaintiffs of their equal rights as guaranteed by the Fourteenth Amendment. This Court therefore declares § 47–18–117 unconstitutional and enjoins its enforcement.

Counsel for the plaintiff shall prepare and submit a declaratory judgment and injunction consistent with this decision.

IT IS SO ORDERED.