# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

BOWDEN BUILDING CORPORATION, )
                        )

         Plaintiff/Appellee,     )   Shelby Chancery No. 108519-2 R.D.
                        )

VS.                        )   Appeal No. 02A01-9807-CH-00175
                        )

TENNESSEE REAL ESTATE      )
COMMISSION, ET AL,         )
                        )

         Defendants/Appellants.   )

**FILED**

July 20, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE FLOYD PEETE, JR., CHANCELLOR

**PAUL G. SUMMERS**
**Attorney General & Reporter**
**MICHAEL E. MOORE**
**Solicitor General**
**CHARLES L. LEWIS**
**Assistant Attorney General**
Nashville, Tennessee
Attorneys for Appellants


**RICHARD GLASSMAN**
**JOHN BARRY BURGESS**
**HEATHER W. THOMPSON**
**GLASSMAN, JETER, EDWARDS & WADE, P.C.**
Memphis, Tennessee
Attorneys for Appellee

**REVERSED AND DISMISSED**


                                       **ALAN E. HIGHERS, J.**


**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

       The Tennessee Real Estate Commission ("the Commission"), the individual

members of that commission ("the Commission members"), and the Tennessee Attorney General sought permission to appeal from the trial court's interlocutory order denying their motion to dismiss. We granted their application for permission to appeal and, for the reasons hereafter stated, we reverse the trial court's denial of the Defendants' motion to dismiss.

## FACTS AND PROCEDURAL HISTORY

This action, which was originally commenced by Bowden Building Corporation ("Bowden") in November 1996, pertains to the construction, enforcement, and constitutionality of particular provisions of the Tennessee Real Estate Broker License Act of 1973 ("the Licensing Act"),[1] and involves claims for declaratory relief, injunctive relief, compensatory damages, punitive damages, and attorney fees. Bowden asserts its claims for relief in reliance upon: (1) 42 U.S.C. sections 1983 and 1988 (for alleged violations of the First and Fourteenth Amendments to the United States Constitution); (2) Article I, section 8 and Article XI, section 8 of the Tennessee Constitution; (3) Tennessee Code Annotated section 39-17-309; (4) Tennessee Code Annotated section 29-14-101 *et seq.* ("the Declaratory Judgment Act"); and (5) the Uniform Administrative Procedures Act.[2] Claims for declaratory and injunctive relief are asserted against the Commission, the Attorney General[3] (who is expressly sued in his official capacity only), and each Commission member (based upon both the individual capacity and the official capacity of each such member). Bowden's claims for compensatory damages are asserted only against each individual Commission member (based only upon the personal or individual capacity of each such member), and its claim for punitive damages is asserted only against defendant Bobbi Gillis, who is one of the named Commission members. The facts alleged by Bowden to support its claims for relief are set forth in the following paragraph.

---

1. See Tenn. Code Ann. §§ 62-13-101 *et seq.* (1997 & Supp. 1998).

2. See Tenn. Code Ann. §§ 4-5-101 *et seq.* (1998).

3. The Tennessee Attorney General was made a party based upon Tennessee Code Annotated section 29-14-107(b), which provides that "the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard" where a statewide statute is alleged to be unconstitutional. See Tenn. Code Ann. § 29-14-107(b) (1980).

Bowden is a Tennessee corporation "engaged in the business of acquiring and selling real estate for its own account in Shelby County, Tennessee, through . . . corporate representatives," some of which are not licensed real estate brokers. These corporate representatives "are salaried employees and are not paid on a commission basis in relation to the value of the corporate real estate which is sold by the representative." On or about December 9, 1996, the Commission, by and through counsel, notified Bowden that "the Commission voted unanimously to request counsel to take action to prevent violations of the Real Estate Broker's Act by [Bowden]." The letter that was sent to Bowden explained that an investigation had revealed that Bowden (through its employees) was violating the Licensing Act, which is a criminal offense.[4] This letter further stated,

> This office hereby directs [Bowden] to **Cease and Desist**. Any continued illegal activity . . . will result in this office requesting action by the State Attorney General and also by the local District Attorney.

Also, on December 9, 1996, the Commission sent letters to two named Bowden employees similarly informing them that an investigation indicated that they were "acting as real estate broker[s] without proper licensure," and explaining, "This activity is a criminal offense, which could be subject to criminal prosecution, or to civil action by the State Attorney General." Bowden's complaint claims that the *Commission's* action, through its members, amounts to "bad faith harassment" and that the *Commission* has selectively enforced the Licensing Act in an improper manner. Other allegations were asserted by Bowden in relation to specific claims, but we will address any such pertinent allegations below in context with our analysis of the claims to which the allegations specifically relate.

Bowden's complaint, as amended, requests the trial court to afford the following relief:

> a) Enter a judgment against all defendants declaring that the actions of the plaintiff through its duly authorized representatives involving the disposition of real estate owned by the plaintiff as described herein are exempt from the provisions of the [Licensing Act] as provided by T.C.A. § 62-13-104.

> b) In the alternative, enter a judgment declaring T.C.A. § 62-13-104(6) to be unconstitutional and that the provisions of the [Licensing Act] are therefore unenforceable against corporations engaged in the practice of

---

4. Tennessee Code Annotated section 62-13-110(a) provides, "Any person acting as a broker . . . without first obtaining a license commits a Class B misdemeanor." Tenn. Code Ann. § 62-13-110(a)(1) (1997).

3

selling real estate owned by said corporation.

c)   Issue a temporary injunction and permanent injunction enjoining future enforcement of the [Licensing Act] by the [Commission], the Attorney General, in his official capacity, or the individual members of the [Commission] in their personal/individual and/or official capacities, against [Bowden] for the sale of property owned by [Bowden] by authorized officers and/or representatives of [Bowden].

d)   Issue a temporary injunction and permanent injunction enjoining the future enforcement of T.C.A. § 62-13-109 or § 62-13-110 by the [Commission], the Attorney General, in his official capacity, or the individual members of the [Commission] in their personal/individual and/or official capacities, against [Bowden] in relation to the sale of any property owned by [Bowden] through duly authorized officers and/or representatives of [Bowden].

e)   Award damages against the individual members of the [Commission] in their personal or individual capacities to [Bowden] for the deprivation of [Bowden's] fundamental constitutional and civil rights in the amount of $500,000.00 and an additional $100,000.00 actual and $250,000.00 in punitive damages against the Defendant, Gillis.

f)   Award attorney's fees pursuant to 42 U.S.C. Section 1988.

g)   Award [Bowden] the costs of this action.

On August 6, 1997, the Defendants collectively filed a motion to dismiss Bowden's complaint, as amended. In their motion to dismiss, the Defendants asserted that dismissal was proper as to Bowden's general claims for declaratory relief because Bowden failed to seek such relief in the Davidson Chancery Court in accordance with the Uniform Administrative Procedures Act.[5] The Defendants also asserted that dismissal was proper as to any 42 U.S.C. section 1983 claims because "the defendants are entitled to absolute and/or qualified immunity," and because Bowden "failed to state a claim under 42 U.S.C. § 1983." Furthermore, the Defendants asserted that Bowden "failed to state a claim for relief under Tenn. Code Ann. § 39-17-309." Last, the Defendants sought dismissal of this suit "in its entirety" based upon Bowden's failure to state a claim upon which relief can be granted.

On November 13, 1997, the trial court denied the Defendants' motion to dismiss. In its order, it stated:

Based upon T.C.A. § 20-4-107, it is the opinion of the Court that venue is proper within this judicial district and that further this Court does have

_____

5. See Tenn. Code Ann. §§ 4-5-223 and -225 (1998).

4

jurisdiction over the issues and parties outlined in the pleadings. To allow for any appeal which might be taken as to this ruling of the Court, the Defendants' Motion to Dismiss is otherwise denied subject to the Defendants' renewal of the Motion after appropriate discovery is conducted.

Both the trial court and this Court thereafter granted the Defendants permission to appeal this interlocutory order pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure.

## ANALYSIS

Before reviewing the trial court's denial of the Defendants' motion to dismiss, we find it appropriate to note that, on appeal, Bowden contends that the trial Court expressly ruled only upon the Defendants' venue challenge, and that this Court's review should be limited to jurisdictional or venue matters relating to Bowden's general claims for declaratory relief. We reject this contention, however, because, while the trial court's November 13, 1997 order may have specifically discussed the Defendants' venue challenge, the order further expressly provided, "the Defendants' Motion to Dismiss is otherwise denied." Accordingly, contrary to Bowden's position, the trial court's order did in fact deny all aspects of the Defendants' motion to dismiss (regardless of the order's added language stating "subject to the Defendants' *renewal* of the Motion after appropriate discovery is conducted").

## I. Federal Civil Rights

### A. Section 1983 Claims Against the State

Bowden failed to state a claim against the Commission to whatever extent that its claims were asserted based upon section 1983. Section 1983 establishes,

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C.S. § 1983 (Supp. 1998) (emphasis added). A state, however, is not a "person" as contemplated by section 1983, and may not be sued under the statute. Will v. Michigan

5

Dep't of State Police, 491 U.S. 58, 64, 71, 109 S.Ct. 2304, 2308, 2312, 105 L.Ed.2d 45, 53, 58 (1989).  Therefore, section 1983 does not authorize Bowden's claims against the Commission.

     B.  Section 1983 "Official-Capacity" Claims Against State Officials

Similarly, Bowden failed to state a section 1983 claim against the Commission members, to the extent that its claims were asserted against the Commission members in their official capacity, and against the Attorney General, who was sued only in his official capacity.  In a recent opinion Hamilton v. Cook, No. 02A01-9712-CV-00324, 1998 WL 704528 (Tenn. App. Oct. 12, 1998), this Court explained the following:

> Just as section 1983 does not authorize a suit against the state, the statute also does not authorize suits for damages against state officials in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).  The rationale for this rule is that state officers sued for damages in their official capacities are not "persons" within the meaning of section 1983 because such officers "assume the identity of the government that employs them." *Hafer v. Melo*, 502 U.S. 21, 27, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).  In an official-capacity suit, the real party in interest is the governmental entity and not the named official. *Id.* at 25.  As the United States Supreme Court has explained,
>
> > [A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985).  As such, it is no different from a suit against the State itself.
>
> *Will v. Michigan Dep't of State Police*, 491 U.S. at 71.
>
> Moreover, in distinguishing between official-capacity suits and personal-capacity suits, the Supreme Court has explained:
>
> > Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. ... Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent."
>
> *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

Therefore, section 1983 does not authorize Bowden's claims against either the Commission members or the Attorney General, to the extent that such claims were asserted based upon those defendants' official capacities.

6

C.  Section 1983 "Individual-Capacity" Claims


Section 1983 claims are limited to cases which involve "the deprivation of any rights, privileges, or immunities" secured under federal law.  Accordingly, no claim for relief can be granted absent the deprivation of such rights.  In this case, Bowden asserts that the Commission members' efforts to enforce the Licensing Act violated Bowden's constitutional rights based upon the First and Fourteenth Amendments to the United States Constitution. Therefore, in order to resolve whether Bowden's remaining section 1983 claims should have been dismissed for failure to state a claim upon which relief can be granted, we find it appropriate to construe, as a matter of law, the Licensing Act as it relates to corporations and corporate employees, and to determine whether enforcement of the Licensing Act violates Bowden's First and Fourteenth Amendment rights.


*1.  The Licensing Act*


In Business Brokerage Centre v. Dixon, 874 S.W.2d 1 (1994), the Tennessee Supreme Court set forth the following relevant overview of the Licensing Act:

> The [Licensing Act] is designed to protect the public from irresponsible or unscrupulous persons dealing in real estate. *Prowell v. Parks*, 767 S.W.2d 633, 634 (Tenn.1989).  To achieve this end, the Act requires persons dealing in real estate to obtain a real estate broker's license, Tenn. Code Ann. § 62-13-301, and the failure to obtain a broker's license before engaging in acts defined as "brokering" is punishable as a Class B misdemeanor.  Tenn. Code Ann. § 62-13-110(a)(1).  Moreover, the Act also denies a nonlicensed person access to the courts to recover any commission, finders fee, or other compensation for the prohibited acts. Tenn. Code Ann. § 62-13-105.  To maximize the deterrent effect of the Act, the Legislature drafted its provisions broadly.  The basic provision, Tenn. Code Ann. § 62-13-103, provides that
>
>> (a) Any person who, directly or indirectly for another, with the intention or upon the promise of receiving any valuable consideration, offers, attempts or agrees to perform, or performs, any single act defined in § 62-13-102, whether as a part of a transaction, or as an entire transaction, is deemed a broker, affiliate broker or time share salesperson within the meaning of this chapter.
>>
>> (b) The commission of a single such act by a person required to be licensed under this chapter and not so licensed constitutes a violation thereof.
>
> The term "broker" is defined in § 62-13-102 as

> [A]ny person who for a fee, commission, finders fee or any other valuable consideration, or with the intent or expectation of receiving the same from another, solicits, negotiates or attempts to solicit or negotiate the listing, sale, purchase, exchange, lease or option to buy, sell, rent or exchange for any real estate or of the improvements thereon or any time-share interval as defined in the Tennessee Time-Share Act, compiled in title 66, chapter 32, collects rents or attempts to collect rents, auctions or offers to auction, or who advertises or holds himself out as engaged in any of the foregoing.
>
> The term "real estate" is also defined broadly. Section 62-13-102(4) defines the term as "leaseholds, as well as any other interest or estate in land, whether corporeal, incorporeal, freehold or nonfreehold, and whether the real estate is situated in this state or elsewhere."

Business Brokerage Centre v. Dixon, 874 S.W.2d at 3. As defined, "broker" generally pertains to persons[6] who receive or expect to receive some form of consideration *from another* for their efforts in soliciting or negotiating the listing, sale, or purchase of real estate. The mere receipt of consideration for the real estate itself (and not for efforts in soliciting or negotiating the listing, sale, or purchase of the real estate) does *not* satisfy this general definition of broker. Accordingly, an owner of property who lists or sells its own interest in property is not a broker requiring licensing. Any other person, including an employee or other agent of the owner, who lists or sells that property, however, qualifies as a broker if he or she receives or expects to receive any valuable consideration that is associated with their efforts in soliciting or negotiating the listing, sale, or purchase of the real estate. In fact, section 62-13-102 further specifically provides:

> "Broker" also includes any person *employed by* or on behalf of *the owner* or owners of lots or other parcels of real estate, at a salary, fee, commission, or any other valuable consideration, to sell such real estate or any part thereof, in lots or parcels or other disposition thereof.

Tenn. Code Ann. § 62-13-102(3)(B) & (12) (1997) (emphasis added). Moreover, section 62-13-104 specifically provides that the provisions of the Licensing Act do not apply to "An owner of real estate with respect to the property owned or leased by such person." Id. § 62-13-104(a)(1) (Supp. 1998).

Insofar as we have thus far reviewed the Licensing Act's provisions, Bowden would not *directly* violate the Licensing Act as related to the allegations in the instant case because Bowden itself is not required to obtain a real estate broker's license. Bowden's

---

6. "'Person' means and includes individuals, corporations, partnerships or associations, foreign and domestic." Tenn. Code Ann. § 62-13-102(3)(B) & (12) (1997).

employees to which Bowden refers in its complaint, however, would thus far be required to possess a real estate broker's license. Our analysis of the Licensing Act's provisions, however, is not yet complete. Under section 62-13-104(a)(6), the Licensing Act does not apply to the following:

> A corporation ... acting through an officer duly authorized to engage in such real estate transaction, where the transaction occurs as an incident to the ... sale or other disposition of real estate owned by the corporation; however, this exemption does not apply to a person who performs an act described in § 62-13-102(3)(A) either as a vocation or for compensation, if the amount of the compensation is dependent upon, or directly related to, the value of the real estate with respect to which the act is performed ....

Id. § 62-13-104(a)(6). According to Bowden's complaint, the employees used for selling its real estate who are not licensed real estate brokers "are salaried employees and are not paid on a commission basis in relation to the value of the corporate real estate which is sold by the representative." Standing alone, however, this fact does not satisfy section 62-13-104(a)(6)'s exemption. These employees must also be corporate officers authorized to engage in such real estate transactions, and must not perform such real estate services as a vocation. Failure to satisfy either of these requirements removes Bowden's employees from section 62-13-104(a)(6)'s exemption, and they would be required to possess a real estate broker's license.

Bowden's section 1983 claims are premised upon the argument that enforcement of the Licensing Act violates Bowden's constitutional rights (even though Bowden alternatively sought a declaration that the actions of its unlicensed employees satisfied section 62-13-104(a)(6)'s exemption). More specifically, as related to Bowden's section 1983 claims against the individual Commission members, Bowden asserted that the members "voted to enforce the provisions" of the Licensing Act and that their enforcement and/or threatened enforcement of the Licensing Act violates Bowden's constitutional rights. Therefore, for purposes of reviewing whether Bowden stated any section 1983 claims upon which relief can be granted (and for purposes of reviewing Bowden's Tennessee civil rights claims -- discussed below), we must assume that Bowden's unlicensed employees did not satisfy section 62-13-104(a)(6)'s exemption to the general licensing requirement (*i.e.*, we must assume the Licensing Act required that Bowden's subject employees be licensed).

9

If enforcement of the Licensing Act would not violate Bowden's asserted federal constitutional rights under such circumstances, Bowden's section 1983 claims fail to state any claim upon which relief can be granted.

*2. Bowden's Fourteenth Amendment Rights*

Section one of the Fourteenth Amendment to the United States Constitution provides:

> No State shall . . . deprive any person of life, liberty, or property without due process of law; nor deny any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV, § 1. Bowden contends "that an owners [sic] right to alienate property is a fundamental right protected by the Fourteenth Amendment to the United States Constitution," and that the Licensing Act impairs its right to alienate its property if Bowden can only utilize employees who are licensed real estate brokers in the sale of its property. Moreover, Bowden contends that the Licensing Act creates an "unreasonable, irrational, arbitrary and impermissible" classification as between individual and corporate owners of real property, in that an individual can freely engage in the business of "acquiring and selling real estate for [his or her] own account" without the use of a licensed broker (by utilizing his or her *own* services), but a corporation cannot act as such because "a corporation cannot act except through its employees or officers" or other agents.

In the context of *testamentary* dispositions of real property, the Tennessee Supreme Court has stated, "The power to dispose of . . . real estate . . . depends entirely upon statute." Epperson v. White, 156 Tenn. 155, 299 S.W. 812, 815 (1927). Moreover, the right to dispose of real property by will "is not a natural or constitutional right, and may be limited and regulated by legislation." Id. See also Calhoun v. Campbell, 763 S.W.2d 744, 749 (Tenn. 1988). However, even though the power to dispose of property "is not a natural or constitutional right," it has been commonly referred to as a "fundamental" right. See, e.g., T.P.I.--CIVIL § 11.51 (2d ed. 1988) (stating, "The right to dispose of property by will is a fundamental right assured by law . . ."). Of course, this "fundamental" right is limited and

10

controlled by state statutes.

As we have already stated, Bowden asserts that an owner's right to alienate property is a fundamental right protected by the Fourteenth Amendment. In support of this contention, it cites State v. Greeson, 174 Tenn. 178, 124 S.W.2d 253 (1939), for the broad and generalized proposition that the Constitution guarantees, among other things, "the right to acquire, hold and dispose of property." See 124 S.W.2d at 256. As with the right to dispose of real property by will, however:

> Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Accordingly, in reviewing the constitutionality of state legislation, "[t]he right freely to alienate real property is not a 'fundamental right' that calls for application of strict scrutiny." National Western Life Ins. Co. v. Commodore Cove Improvement Dist., 678 F.2d 24, 26 (5th Cir. 1982) (citing Seoane v. Ortho Pharmaceuticals, Inc., 660 F.2d 146, 149 n. 6 (5th Cir. 1981)). See also Central Security Nat'l Bank of Lorain County v. Royal Home, Inc., 371 F.Supp. 476, 482 (E.D. Mich. 1974) (recognizing that the right to alienate one's property is not a fundamental right like the rights of privacy, free expression, and interstate travel). Instead, any statute that impairs the ability to alienate real property freely must satisfy only the "rational basis" standard of review. National Western Life Ins. Co., 678 F.2d at 26; Central Security Nat'l Bank, 371 F. Supp. at 482. Therefore, in this case, we must simply determine whether the Licensing Act is a reasonable means of achieving a legitimate governmental goal. National Western Life Ins. Co., 678 F.2d at 26-27.

Our review of the Licensing Act leads us to conclude that the challenged statutory scheme presents a reasonable means of achieving a legitimate governmental goal. Cf. Boise Cascade Home & Land Corp. v. New Jersey Real Estate Comm'n, 296 A.2d 545, 553 (Super. Ct. Ch. Div. 1972) (holding that legislation requiring a corporate plaintiff's telephone operators/solicitors to be licensed real estate brokers is reasonably related to

11

a valid state interest).  The Tennessee Supreme Court has stated:

> After considering the [Licencing] Act as a whole, and after reviewing its legislative history, this Court firmly believes that the central, overriding objective of the Act is to protect purchasers against unfair and deceptive practices that are peculiar to the sale of real property.

Business Brokerage Centre v. Dixon, 874 S.W.2d 1, 5 (1994).  In order to contest the reasonableness of the Licensing Act's statutory scheme, Bowden relies in part upon Florida Real Estate Comm'n v. McGregor, 336 So.2d 1156 (Fla. 1976), wherein the Florida Supreme Court set forth the following analysis:

> It is necessary ordinarily to regulate a real estate broker or salesman because misrepresentations of [sic] misconduct on his part cannot necessarily be visited upon the person or entity he represents.  A member of the public who is injured by the acts or representations of a broker or salesman does not necessarily have recourse to the principal whom the broker or salesman represents.  But when one deals with the employee of a corporate owner of property the conduct of such employee is the responsibility of the employer under the doctrine of respondeat superior.  While sanctions which can be imposed by the Florida Real Estate Commission upon an errant broker or salesman obviously are necessary to protect the public because of his peculiar legal status and duties, no analagous [sic] argument can be maintained successfully where an injured third party has direct recourse to the owner for the actions of the employee.

336 So.2d at 1159 (citations omitted).  We do not concur, however, with the Florida Supreme Court's conclusion that "no analagous [sic] argument can be maintained successfully where an injured third party has direct recourse to the owner for the actions of the employee."  Just as a buyer of real property may not have recourse against a mere principal for a broker's act or representations, a buyer may not be able to obtain *effective* relief from an employer for an employee's acts or representations, as any type of business defendant may be or become insolvent prior to recovery.  It would be purely speculative for us to assume that every buyer who purchases property through an employee can secure effective relief from the employer/seller.  The Licensing Act, however, requires:

> Each licensee who is licensed under [the Licensing Act] shall, as a condition to licensing, carry errors and omissions insurance to cover all activities contemplated under [the Licensing Act].

Tenn. Code Ann. § 62-13-112(a) (1997).  The terms and conditions of coverage required, including the minimum limits of coverage, the permissible deductible, and the permissible exemptions, are prescribed by the Commission in accordance with section 62-13-112(f).  This uniform requirement of errors and omissions insurance serves to promote the objective of the Licensing Act -- "to protect purchasers against unfair and deceptive

12

practices that are peculiar to the sale of real property" -- in *all* instances involving the sale of real property through any form of agent (whether it be an employee or otherwise). Moreover, we find that the challenged statutory scheme presents a reasonable means of achieving its legitimate governmental goal. The effect of the Licensing Act presents only a limited restriction on a corporate property owner's ability to alienate its property, and does not deprive it of that property or prevent it from disposing of that property.

As we mentioned earlier, aside from Bowden's substantive due process challenge to the Licensing Act, Bowden also asserts an equal protection challenge to the Licensing Act by asserting that the Licensing Act creates an "unreasonable, irrational, arbitrary and impermissible" classification as between individual and corporate owners of real property, in that an individual can freely engage in the business of "acquiring and selling real estate for [his or her] own account" without the use of a licensed broker, but a corporation cannot act as such.[7]

> The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons *similarly situated* should be treated alike.

City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (emphasis added). We conclude that Bowden has failed to state a claim based upon an equal protection violation because Bowden's equal protection challenge does *not* involve similarly situated persons. The fact that an individual can freely engage in the business of selling real estate without the use of a licensed broker, while a corporation has no such unlimited ability, results from the plain fact that a corporation cannot act except through its employees, officers, or other agents. In the limited context of the present case, corporations and individuals are not similarly situated.

Even *if* corporations and individuals were similarly situated for purposes of the present case, Bowden would still have failed to state a claim based upon an equal

---

7. Additionally, Bowden's complaint makes a conclusory assertion that the *Commission* selectively enforced the Licensing Act in an improper manner. We find it unnecessary to address this "selective enforcement" allegation, however, because we have already determined that the Commission was not a proper defendant for Bowden's section 1983 claims.

protection violation. In the context of Fourteenth Amendment Equal Protection challenges to legislation, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." City of Cleburne v. Cleburne Living Center, 473 U.S. at 440, 105 S.Ct. at 3254. "The general rule gives way, however, when a statute classifies by race, alienage, or national origin," or by some other form of classification expressly recognized to receive a higher standard of review. Id. In this case, the purported classification would be subject to the general rule requiring the "rational basis" standard of review and, as we have already discussed, the challenged statutory scheme is rationally related to the legitimate state interest of protecting purchasers "against unfair and deceptive practices that are peculiar to the sale of real property." See Business Brokerage Centre v. Dixon, 874 S.W.2d 1, 5 (1994). Cf. also Boise Cascade Home & Land Corp., 296 A.2d at 553.

### 3. Bowden's First Amendment Rights

Bowden's complaint further asserts that the Commission members' conduct violated Bowden's right to free speech under the First Amendment[8] "by unlawfully preventing and restraining [Bowden] from exhibiting or displaying [its] property to the public" and "by unreasonably preventing [Bowden] from promoting or advertising the sale of property which it owns." This case involves what has been characterized as "commercial speech." See Central Hudson Gas v. Public Service Comm'n of New York, 447 U.S. 557, 561, 100 S.Ct. 2343, 2349, 65 L.Ed.2d 341 (1980).

> The First Amendment, as applied to the states through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation. However, commercial speech enjoys a more limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, and is subject to modes of regulation that might be impermissible in the realm of noncommercial expression.
>
> Commercial speech receives a limited form of First Amendment protection so long as it concerns a lawful activity and is not misleading or fraudulent; once it is determined that the First Amendment applies to the particular kind of commercial speech at issue, then such speech may be restricted only if the government's interest in doing so is substantial, the

---

8. Though the First Amendment pertains solely to acts of Congress, the varying rights and freedoms secured thereunder are applied to the states through the concept of "liberty" established by the Fourteenth Amendment, which Bowden has also relied upon in support of its section 1983 claims.

restrictions directly advance the government's asserted interest, and the restrictions are no more extensive than necessary to serve that interest. In order to determine whether a government restriction on commercial speech is permissible, a court examines four factors: (1) whether the expression concerns a lawful activity and is not misleading; (2) whether the government's interest is substantial; (3) whether the restriction directly serves the asserted interest; and (4) whether the restriction is no more extensive than necessary.

16A AM. JUR. 2d, *Constitutional Law* § 480 (1998). See also Central Hudson Gas, 447 U.S. at 566, 100 S.Ct. at 2351; Memphis Publishing Co. v. Leech, 539 F. Supp. 405 (W.D. Tenn. 1982). As indicated above, the first factor ("whether the expression concerns a lawful activity and is not misleading"), pertains to whether the speech receives constitutional protection. Even assuming the speech receives constitutional protection, however, the restriction on speech is constitutionally permissible if the second, third, and fourth factors are satisfied, *i.e.* the restriction directly serves a substantial governmental interest and is no more extensive than necessary. We conclude that the Licensing Act's restriction of commercial speech is permitted in accordance with these remaining three factors. Cf. Santer v. Globe Publications, Inc., 499 N.E.2d 389, 396 (Ohio App. 1985). In addition to directly serving a substantial governmental interest, we note that the Licensing Act does *not* create an outright ban on real estate solicitation. Moreover, we note that Bowden has not asserted the existence of any alternative means of regulating the exercise of this commercial speech that would serve the government's interest, yet be less extensive.

D. Immunities

On appeal, the individually named Real Estate Commission member defendants contend that, even *if* a valid constitutional claim existed, they are absolutely immune from liability in their individual capacities under 42 U.S.C. § 1983 *as to Bowden's damages claims* because they acted as members of a licensing board in a "quasi-judicial" capacity. They further contend that they possess qualified immunity from liability in their individual capacities as to Bowden's damages claims because their conduct did not violate any clearly established constitutional or statutory right. We find it unnecessary to address these issues, however, having already determined that Bowden failed to state a 1983 claim

15

upon which relief could be granted. We therefore pretermit these issues.

E. Section 1988 Claims for Attorney Fees

Bowden's complaint asserts "that pursuant to 42 U.S.C. Section 1988, [Bowden] is entitled to attorneys fees incurred in this action to eradicate the deprivation of [Bowden's] civil rights by the acts or threatened acts of the defendants." This claim, however, is dependent upon a valid section 1983 claim. Because we have already determined that Bowden failed to state a valid section 1983 claim, Bowden has likewise failed to state a valid section 1988 claim for attorney fees.

## II. Tennessee Civil Rights

Apart from Bowden's section 1983 claims, which were based upon purported federal constitutional violations, Bowden's complaint also asserts claims for relief based upon the Tennessee Constitution and Tennessee Code Annotated section 39-17-309. As with Bowden's assertions regarding federal constitutional violations, Bowden asserts that the Licensing Act's statutory scheme "creates an impermissible classification in violation of Article 1 § 8 and Article 11 § 8 of the Tennessee Constitution and also violates due process provisions under said constitution."[9]

Under federal law, a person whose federal constitutional rights are violated by a

---

9. Article I, section 8 of the Tennessee Constitution provides:

> That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.

TENN. CONST. art. I, § 8. Article XI, section 8 of the Tennessee Constitution provides:

> The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunitie, [immunities] or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law. No corporation shall be created or its powers increased or diminished by special laws but the General Assembly shall provide by general laws for the organization of all corporations, hereafter created, which laws may, at any time, be altered or repealed and no such alteration or repeal shall interfere with or divest rights which have become vested.

TENN. CONST. art. XI, § 8.

federal officer can maintain a private cause of action for damages against the federal officer, even though no statute expressly creates such a cause of action. See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 395-97, 91 S.Ct. 1999, 2004-05, 29 L.Ed.2d 619 (1971). Tennessee, however, has not recognized any such implied cause of action for damages based upon violations of the Tennessee Constitution. Lee v. Ladd, 834 S.W.2d 323, 324 (Tenn. App. 1992); Cline v. Rogers, 87 F.3d 176, 179 (6th Cir. 1995). Beyond Bowden's claims for damages, however, we find that Bowden otherwise failed to state any due process or equal protection claim under the Tennessee Constitution for the reasons explained above with reference to Bowden's section 1983 claims and the purported federal constitutional violations. See also Dickerson v. Sanders Manuf. Co., 658 S.W.2d 535, 539 (Tenn. App. 1983) (summarily rejecting state constitutional challenges, including an Article I, section 8 challenge, to the Licensing Act). While the Tennessee Supreme Court has recognized that interpretations of the federal constitution "only establish a minimum level of protection" that the Tennessee Constitution affords, and that the Tennessee Constitution may afford a higher level of protection in some cases, we find no authority for any such higher protection as related to the instant case. See Burford v. State, 845 S.W.2d 204, 207 (1992). Accordingly, Bowden failed to state any claim based upon violation of the Tennessee Constitution.

As to Bowden's section 39-17-309 claims,[10] we are unaware of any prior authority

---

10. Tennessee Code Annotated section 39-17-309, which is a criminal statute proscribing "Civil rights intimidation," provides:

(a) The general assembly finds and declares that it is the right of every person regardless of race, color, ancestry, religion or national origin, to be secure and protected from fear, intimidation, harassment and bodily injury caused by the activities of groups and individuals. It is not the intent of this section to interfere with the exercise of rights protected by the constitution of the United States. The general assembly recognizes the constitutional right of every citizen to harbor and express beliefs on any subject whatsoever and to associate with others who share similar beliefs. The general assembly further finds that the advocacy of unlawful acts by groups or individuals against other persons or groups for the purpose of inciting and provoking damage to property and bodily injury or death to persons is not constitutionally protected, poses a threat to public order and safety, and should be subject to criminal sanctions.

(b) A person commits the offense of intimidating others from exercising civil rights who:

(1) Injures or threatens to injure or coerces another person with the intent to unlawfully intimidate another from the free exercise or enjoyment of any right or privilege secured by the constitution or laws of the state of Tennessee;

(2) Injures or threatens to injure or coerces another person with the intent to unlawfully intimidate another because that other exercised any right or privilege secured by the constitution or laws of the United States or the constitution or laws of the state of Tennessee;

. . .

17

recognizing such an implied private cause of action for damages.  See Young v. State Farm Mut. Auto. Ins. Co., 868 F. Supp. 937,941-42 (W.D. Tenn. 1994); Vafaie v. Owens, No. 92C-1642, 1996 WL 502133 * 5-6 (Tenn. App. Sept. 6, 1996).  Moreover, we feel it would be anomalous to suggest that the legislature intended an *implied* cause of action for damages for the violation of a *statutory* right, when Tennessee does not even recognize such an implied cause of action for the direct violation of state constitutional civil rights. See Lee v. Ladd, 834 S.W.2d 323, 324 (Tenn. App. 1992); Cline v. Rogers, 87 F.3d 176, 179 (6th Cir. 1995).  Regardless of whether section 39-17-309 creates an implied cause of action for damages, however, Bowden still would not have stated a claim upon which relief could be granted under section 39-17-309 because, as with Bowden's section 1983 claims, Bowden's claim based upon section 39-17-309 is premised upon its assertion that enforcement of the Licensing Act would violate Bowden's rights to due process, equal protection, or free speech.

### III.  Bowden's Remaining Claims for Relief / Venue

As mentioned earlier, aside from Bowden's civil rights claims, Bowden sought declaratory relief as to whether its unlicensed employees are subject to section 62-13-104(a)(6)'s exemption.[11] (Bowden also sought declaratory relief as to whether the Licensing Act is unconstitutional as applied to corporations engaged in the practice of selling real estate owned by the corporation, though it was necessary for us to address this issue of law earlier in the context of Bowden's civil rights claims.)   The Defendants, however, sought dismissal of Bowden's general claims for declaratory relief because Bowden did not seek such relief in Davidson Chancery Court in accordance with the Uniform Administrative Procedures Act.   Therefore, the only issue remaining before this Court that has been

---

        (d) A violation of subsection (b) is a Class D felony. . . . .
        (e) The penalties provided in this section for intimidating others from exercising civil rights do not preclude victims from seeking any other remedies, criminal or civil, *otherwise available under law.*

Tenn. Code Ann. § 39-17-309 (1997) (emphasis added).

11.  As set forth earlier in this opinion, determination of this issue depends upon whether  Bowden's employees are duly authorized officers, whether its employees engage in selling real estate as a vocation, and whether its employees are compensated in relation to the value of the real estate.  See Tenn. Code Ann. § 62-13-104(a)(6) (Supp. 1998).

18

raised by the parties is whether Bowden's remaining claim for declaratory relief could be brought in Shelby County.[12]

Bowden contends that venue is proper in Shelby County based on Tennessee Code Annotated section 20-4-107, which provides:

> Notwithstanding any other provision of law or rule of procedure to the contrary, any action the subject matter of which involves real property in which the state of Tennessee, or any agency thereof, is a party, may be properly instituted in any county in which such property is located.

Tenn. Code Ann. § 20-4-107 (1994). Bowden asserts that the subject matter of this suit involves real property located in Shelby County, Tennessee. We first note, however, that Bowden, in its appellate brief, recognizes that, while the real property that it sells is, in part, located in Shelby County, its business is not limited solely to properties located in Shelby County.[13] Nor is there any specific property to which this suit relates.

In reviewing section 20-4-107's application to the instant case, we are guided by our prior opinion in Barry v. Commissioners of Commerce & Ins., No. 01A01-9404-CH-00156, 1994 WL 485588 (Tenn. App. Sept. 9, 1994). In Barry, the plaintiff, who was not licensed to practice architecture or engineering in Tennessee, was developing a specific property that he owned, and personally developed his own set of plans for remodeling the building on that property. 1994 WL 485588 at *1. After proceeding with the construction without the benefit of a licensed architect or engineer, he received an order from the Board of Architectural and Engineering Examiners to cease the unlicensed practice of architecture and engineering. Id. After he filed suit for declaratory and injunctive relief in the county in which the property was located, which was Wilson County, the trial court dismissed the complaint for lack of proper venue. Id. On appeal, the plaintiff argued that the subject matter of the suit involved the property located in Wilson County, and relied upon section 20-4-107 (quoted above) to support venue. Id. We determined, however, "that the

---

12. We need not resolve whether Bowden's claims for injunctive relief were asserted solely in reliance upon its civil rights claims, because inasmuch as such claims for injunctive relief *may* have otherwise been asserted, such claims would be predicated on the determination of the parties' respective rights in this case (*i.e.*, declaratory relief).

13. At one point, Bowden's brief states that it is "engaged in the business of acquiring real estate, building homes, and selling that real estate for its own account *including* real estate in Shelby County, Tennessee." Later, Bowden characterizes the real estate with which it deals as *"mostly* located in Shelby County."

gravamen of his complaint is his right to practice unlicensed architecture or engineering." Id. Accordingly, because the official residence of state agencies and state officers lies in Davidson County, and because lawsuits brought against state officers generally must be brought in the county of the officer's official residence, we affirmed the trial court's dismissal based on improper venue. Id. (citing Delta Loan & Finance Co. of Tennessee, Inc. v. Long, 336 S.W.2d 5 (Tenn. 1960); Morris v. Snodgrass, 871 S.W.2d 484 (Tenn. App. 1993)). We similarly find that, in this instant case, the gravamen of Bowden's complaint relates to the right of its employees to engage in unlicensed real estate brokering. Moreover, section 4-5-225 of the Uniform Administrative Procedures Act provides:

> The legal validity or applicability of a statute . . . to specified circumstances may be determined in a suit for a declaratory judgment in the chancery court of Davidson County, unless otherwise specifically provided by statute, if the court finds that the statute, rule or order, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the complainant. The agency shall be made a party to the suit.

Tenn. Code Ann. § 4-5-225(a) (1998). Accordingly, the proper venue for Bowden's remaining claims is in Davidson County.

### CONCLUSION

Based upon the foregoing, we reverse the trial court's denial of the Defendant's motion to dismiss and dismiss the complaint herein. Costs of this appeal are taxed to Bowden, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____

20

CRAWFORD, P.J., W.S.

_____

FARMER, J.